In re Robert Carroll **MORRIS IV, A** Member of the Bar of the District of Columbia Court of Appeals.

No. 84–97.

District of Columbia Court of Appeals.

Argued March 25, 1985.

Decided July 19, 1985.

Before FERREN, TERRY and ROGERS, Associate Judges.

## ORDER

PER CURIAM:

■ This is a reciprocal disciplinary matter before the court for consideration of the Report and Recommendation of the Board on Professional Responsibility (the Board). The Board asserts that respondent, who was disbarred on January 11, 1984, by the Maryland Court of Appeals for violation of certain provisions of the Maryland Code of Professional Responsibility,[1] violated the corresponding provisions of the District of Columbia Code of Professional Responsibility[2] and, accordingly, recommends that reciprocal disbarment be imposed. The Report and Recommendation of the Board was based upon evidence adduced in the Maryland proceedings. Under D.C.Bar R. XI, Section (7)(3), we must defer to the Board's findings of fact unless such findings are unsupported by substantial evidence of record, and to "the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted."

The Board found that Respondent had violated the Disciplinary Rules by his conduct in handling two cases. The Board found that in one case he had misappropriated the funds of a client. Respondent had recovered a money judgment for his client, but he and his client could not agree on how to divide the money. Although the client did not endorse the check, her purported signature appeared on the check cleared by the bank on which it was drawn. Thereafter, Respondent wrote his client that he had deposited the check in an escrow account, although he had not done so. In a second case, Respondent's action in representing a client as personal representative of an estate resulted in a loss of funds. He urged the client to reject an offer to purchase the decedent's house because Respondent and his father would purchase the house, which they did not. Respondent also failed to file the required reports on the estate. Upon being discharged by his client, respondent presented a bill for services rendered which included a number of false statements, and subsequently misrepresented to the Maryland court the nature of a payment from his client. We are satisfied that the record supports the Board's findings of fact and that respondent violated Disciplinary Rules 1–102(A), 5–101(A), 6–101(A), 7–101(A), and 9–103(A) and (B).[3]

---

1. Respondent was found to have violated Maryland Code of Professional Responsibility Disciplinary Rules 1–102(A)(1), (3)–(6); 5–101(A); 6–101(A)(2), (3); 7–101(A)(1)–(3); and 9–102(A), (B).

2. The District of Columbia Code of Professional Responsibility does not include DR 1–102(A)(6), and DR 9–102(A), (B) has been redesignated as DR 9–103(A), (B).

3. DR 1–102 provides in pertinent part:
   (A) A lawyer shall not:
     (1) Violate a Disciplinary Rule.
     *   *   *   *   *   *
     (3) Engage in illegal conduct involving moral turpitude that adversely reflects on his fitness to practice law.
     (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
     (5) Engage in conduct that is prejudicial to the administration of justice.
   DR 5–101(A) provides:
     Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.
   DR 6–101(A) provides in pertinent part:
     (A) A lawyer shall not:
     *   *   *   *   *   *
     (2) Handle a legal matter without preparation adequate in the circumstances.
     (3) Neglect a legal matter entrusted to him.
   DR 7–101(A) provides in pertinent part:
     (A) A lawyer shall not intentionally:
     (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B)....
     (2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2–110, DR 5–102, and DR 5–105.
     (3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B).
   DR 9–103 provides:

Substantively, respondent makes the same arguments here which he made to the Maryland Court of Appeals, but he has framed them differently. He contends that: (1) the proof in the Maryland proceedings was so infirm that this court cannot accept as final the Maryland court's conclusion; (2) the established misconduct warrants a substantially different kind of discipline; (3) disbarment by the District of Columbia would result in a grave injustice; and (4) the established misconduct in Maryland does not constitute misconduct in the District of Columbia. In its report, which is incorporated in part by reference (See Appendix), the Board evaluated these contentions and found them to be without merit. We agree with the Board's analysis and conclusions and accept them without further analysis or elaboration, except with respect to the Fifth Amendment issue, which we discuss briefly in view of Respondent's brief in this Court.[4] Respondent argues that the Maryland court judge erroneously compelled him to testify, and that because he asserted the Fifth Amendment, he made an imprudent decision which resulted in certain favorable proof never coming to the Maryland court's attention.

■ We address this claim because respondent has asserted in his brief in this court that because of his exercise of the Fifth Amendment privilege in the Maryland

disciplinary proceedings, his defense was never presented. That defense, briefly stated, is: that he had deposited his client's settlement check in his escrow account, that a Maryland Court had held that $3000.00 of the $4000.00 settlement money represented expert witness fees, that he had a retainer agreement entitling him to a one-third contingency fee and requiring the client to pay court costs, and the contingency fee and court costs exceeded the amount remaining after the expert fees. As respondent concedes, he asserted his Fifth Amendment privilege but the Maryland trial judge compelled him to testify. He thus had the opportunity to present any defense he chose or had available, and a review of the transcript of the Maryland proceedings reveals that respondent's defense was heard. That his testimony was conflicting and convoluted is no reason to conclude that no defense was presented. Because we concur with the Board's conclusion and recommendation, we do not elaborate on the evidence.

■ In recommending disbarment, the Board agreed, as do we, with the Maryland Court of Appeals "that 'under the sum total of the circumstances' of Respondent's conduct in [the two cases], 'disbarment is the proper sanction to be imposed.'"

Accordingly, it is ORDERED by the Court that respondent, Robert Carroll Mor-

(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties.

(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safe-keeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in possession of the lawyer which the client is entitled to receive.

4. The Board rejected Respondent's Fifth Amendment argument because it found that the evidence in the Maryland disciplinary proceedings was sufficient to warrant disbarment without regard to Respondent's disputed testimony, but it also rejected Respondent's Fifth Amendment argument on the merits.

ris IV, is disbarred from the practice of law in the District of Columbia. This order shall take effect 30 days from the date of this opinion.

Appendix: Parts I, II, III and V of the Report and Recommendation of the D.C. Board on Professional Responsibility, dated June 29, 1984.

## DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

Bar Docket Number: 115–84

IN THE MATTER OF ROBERT CARROLL MORRIS IV

### REPORT AND RECOMMENDATION

Respondent is an attorney admitted to the bar both in Maryland and the District of Columbia. Respondent has now been disbarred in Maryland, and the District of Columbia Court of Appeals has directed the Board on Professional Responsibility to recommend whether reciprocal discipline should be imposed or whether the matter should be heard *de novo* in this jurisdiction. The Board recommends reciprocal discipline.

### I. *PRELIMINARY STATEMENT*

At the evidentiary hearing in a disciplinary proceeding before a Circuit Court judge in Maryland, Respondent elected to proceed *pro se,* although he had the right to be represented by counsel. After hearing the evidence, the trial judge issued a report finding that Respondent had violated numerous disciplinary rules.

In an appeal before the Court of Appeals of Maryland, Respondent was represented by counsel but made no exceptions to the trial judge's report. Instead, Respondent pleaded for leniency on the ground that his wrongdoing was not intentional.

The Maryland Court of Appeals "meticulously examined the record," found "clear and convincing evidence to support the findings of fact of the trial judge," and concluded that those "findings warrant his conclusions of law." The Court of Appeals of Maryland then determined that there were "no extenuating circumstances" and that "disbarment is the proper sanction."

Respondent then filed a Motion for Reconsideration, which the Court of Appeals of Maryland summarily denied without hearing.

In the proceedings before this Board, Respondent has filed an "objection" to reciprocal discipline and has attached thereto both the "Motion for Reconsideration" and "Memorandum in Support of Motion for Reconsideration" previously filed with the Court of Appeals of Maryland. Thus, Respondent is here making the same arguments as were presented to the Maryland Court of Appeals in a Motion for Reconsideration. Stripped of all surplusage and repetitiveness, these arguments boil down to two main contentions, *i.e.,*

—that misappropriation of a client's funds does not warrant disbarment when no intent to steal or defraud is found; and

—that the trial judge improperly overruled Respondent's objections based on his Fifth Amendment privilege against self-incrimination.

This Board has carefully considered both of Respondent's objections under the criteria for reciprocal discipline as set forth in Rule XI, Sec. 18(5) of the D.C. Court of Appeals, which provides in pertinent part that reciprocal discipline will be imposed unless:

(a) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

(b) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that

the Court could not, consistent with its duty, accept as final the conclusion of that subject; or

(c) The imposition of the same discipline by the Court would result in grave injustice; or

(d) The misconduct established warrants substantially different discipline in this jurisdiction; or

(e) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

Respondent's objections to reciprocal discipline are not persuasive under any of the above criteria.

## II. *RESPONDENT'S MISCONDUCT AS ESTABLISHED BY THE EVIDENCE IN THE MARYLAND PROCEEDINGS*

The charges against Respondent were based on his conduct in handling two cases. One of these was *Martin v. Lockwood*, in which Respondent was found to have misappropriated the funds of a client, and the second matter involved the estate of William M. Poynton.

### A. *The Record in the Maryland Proceedings Relating to Misappropriation in Martin v. Lockwood*

The charges against Respondent relating to misappropriation occurred in the course of his conduct in *Martin v. Lockwood.*

Respondent, as the attorney for Ms. Martin, had recovered a $4,000 judgment on her behalf and thereafter received a check for that amount payable to himself and Ms. Martin. The check was dated August 14, 1981.

In preparing for trial of Ms. Martin's case, Respondent hired a Mr. Hellman as an expert to assist in the preparation and to testify at the trial. Mr. Hellman later presented a bill of over $3,000 for his services, and Respondent claimed he (Respondent) was entitled to a contingent fee of $1,333, or one-third of the total recovery. Payment of these two claimed amounts would have left no money at all for Ms. Martin.

At a post-trial meeting Ms. Martin and Respondent were unable to agree on how the amount recovered should be divided, and Ms. Martin did not sign the $4,000 check. However, the check, with her purported signature thereon, cleared the bank on which it was drawn on September 18, 1981. In August or September 1981, Respondent wrote Ms. Martin that he had placed the funds in escrow, when in fact he had not done so.

An interrogatory in the disciplinary investigation asked Respondent to state where the $4,000 was from the time it was received in August 1981 until September 17, 1982, and Respondent answered "People's Security Bank of Maryland" (II Tr. 36). However, the evidence showed that an escrow account in Respondent's name was first opened in the People's Security Bank of Maryland on September 17, 1982, which was thirteen months after Respondent had received the $4,000 and was also the same day as the hearing on the disciplinary charges against Respondent. The check starting the escrow account on September 17, 1982 was not the check Respondent had received in the *Martin* case. Respondent had no other account in the People's Security Bank.

The $4,000 in the escrow account was ultimately distributed to Ms. Martin and Mr. Hellman on April 15, 1983. By that time, Mr. Hellman had obtained a judgment against Respondent and Ms. Martin had brought suit against him.

At the Maryland disciplinary hearing, Bar Counsel called Respondent to the

stand. At first, Respondent objected and refused to testify on the ground that he had a constitutional right not to testify as part of the case in chief against him. The objection was overruled. (II Tr. 23). Thereafter, in response to numerous specific questions of Bar Counsel, Respondent testified at length concerning his handling of the $4,000 recovery in the *Martin* case. He said that after he received the $4,000 check, he signed his name on the check and gave it to his father who took care of his business affairs (II Tr. 26, 33, 35). Respondent said he did not know who signed Ms. Martin's name to the check. He explained that he had no bank statements with respect to the $4,000 for the period from August 14, 1981 to September 17, 1982. (II Tr. 34). Respondent said he had discussed with his father the theory that Mr. Hellman's charges were "costs" and that no money was due to Ms. Martin because these "costs" plus his own contingent fee aggregated more than the $4,000 recovery. He also discussed a presumed "right" to deal with "costs" in any manner he saw fit. (Tr. 33, 35).

Respondent further testified in the Maryland disciplinary hearing that he did not write the check by which the escrow account was opened on September 17, 1982 and that he did not personally open the account. (II Tr. 40–41). Respondent was asked whether it had been opened on September 17, 1982 at his direction, and he answered "No, I didn't discover it until later that it wasn't escrowed all along." (II Tr. 41) Then, he was asked "Until later than what?", whereupon Respondent refused to answer this specific question based on a claimed constitutional right against self-incrimination. The Maryland judge overruled Respondent's objection, stating that the privilege against self-incrimination is not available in a grievance proceeding. Respondent then testified that he learned after September 17, 1982, that the money had not been previously es-

crowed (Tr. 40 42). Respondent's subsequent testimony with respect to the *Martin* case related to the final disposition of the $4,000 in 1983 (II Tr. 46 49).

The trial judge found that for the period between August 14, 1981 (the date on which he received the $4,000 check) and September 17, 1982 (the date the escrow account was opened), Respondent had misappropriated and converted the $4,000 to his own use.

B. *The Record in the Maryland Proceedings Relating to Respondents' Misconduct In The Poynton Estate Matter*

In February 1981, Wilma Briggles hired Respondent and paid him a retainer of $500 to represent her as the Personal Representative and/or to represent the estate of Wilbur M. Poynton who had died in January 1981. Respondent had previously prepared Poynton's will, which divided the decedent's property equally between two surviving children, one of whom was Wilma Briggles.

Respondent assisted in arranging for a listing contract between Wilma Briggles and a real estate firm, and in March 1981 this listing resulted in an offer of $29,100 to buy the decedent's house, which was the only major asset of the estate. However, Respondent urged Wilma Briggles not to accept this offer. The reason given was that either Respondent, or his father, would purchase the house. No such purchase was forthcoming, and in November 1981 the house was sold for only $24,000, of which $14,900 was paid by means of an interest-free five-year note.

In the meantime, Respondent did not file anything in the estate matter until November 4, 1981. At that time, he filed an Inventory along with a notice of his appearance. Previously, on May 13, 1981, the

Register of Wills had sent Wilma Briggles a notice that two reports for the estate were overdue, and she proceeded to file one of these reports in June 1981 without any assistance from Respondent. Briggles had previously filed numerous other papers in the estate proceeding.

Later, in December 1981, Wilma Briggles discharged Respondent as her attorney, whereupon Respondent submitted his statement for services rendered in the amount of $1,845. This statement include numerous false statements, to wit:

—that Respondent had obtained an Order admitting the will to probate;

—that Respondent had obtained testimony of subscribing witnesses, a certificate of proof of will and letters testamentary; and

—that Respondent had handled the publication of notice to creditors and prepared a tax report.

Respondent's statement also included two items asserted to represent amounts due to Respondent from Max Poynton (the other surviving child of the decedent) on two loans of $100 each, plus a $500 charge for services allegedly rendered to the son of Wilma Briggles. None of these items pertained to the estate.

In April 1982, during a hearing on Respondent's petition for counsel fees in the estate matter, Respondent misrepresented to the Court that the $500 payment from Wilma Briggles was not for handling the estate. In fact, she had paid Respondent a separate amount, also of $500, to handle her non-estate matter, as well as $500 for the estate proceeding.

In the Maryland disciplinary proceedings, Respondent's conduct in the Poynton estate matter was found to violate numerous disciplinary rules, *e.g.*, DR 1–102(A)(1), (5) and (6); DR 2–106; DR 2–110(B)(4); DR 5–101(A); DR 7–101(A)(2) and (3); and DR 7–106(C)(6) and (7). Without unduly extending this Report by an analysis of each of these violations found in the Maryland proceedings, this Board is satisfied that the factual findings of the Maryland court, which Respondent does not dispute, support the conclusion that Respondent violated each of the above disciplinary rules one or more times.

III. *RESPONDENT'S OBJECTION TO THE ADEQUACY OF THE RECORD ON MISAPPROPRIATION*

In his objections to reciprocal discipline, Respondent argues that the record in the Maryland proceedings contained "insufficient proof" of any violation sufficient to warrant disbarment, because "there has never been a finding of fact that he misappropriated his client's funds for personal gain." This same contention was made in Respondent's Motion for Reconsideration before the Court of Appeals of Maryland:

"The mishandling of client funds does not warrant disbarment when no intent to steal or defraud is found."

Memorandum in Support of Motion for Reconsideration, at p. 3.

In terms of Rule XI criteria, Respondent contends that the balance of an affirmative finding of intentional dishonesty or fraud should "give rise to the clear conviction" that this jurisdiction "could not, consistent with its duty, accept as final the conclusion [of the Maryland Court of Appeals] on that subject," and that reciprocal disbarment in the District of Columbia "would result in grave injustice." This contention is totally lacking in merit.

The basic premise underneath Respondent's contention is that the Maryland Court of Appeals, in ordering disbarment, grossly misapplied the state's disciplinary rules.

Respondent's contention borders on the frivolous. It was only two years ago that

the Court of Appeals of Maryland undertook "once again ... to make indelibly clear that, ordinarily, the sanction for misappropriation of a client's funds by an attorney is disbarment." *Atty. Grievance Comm'n v. Boehm*, [293 Md. 476], 446 A.2d 52 (Md.1982). In that proceeding, the accused attorney (Boehm) argued on appeal that disbarment was not justified inasmuch as "the trial judge did not conclude that Boehm [had engaged in] ... conduct involving dishonesty, fraud, or deceit". The Court of Appeals of Maryland found "it unnecessary to decide that issue" because bank statements established that the balance in the attorney's escrow account, into which the proceeds of a sale of property in an estate had been deposited, fell far below the amount due to the estate. Although the "trial judge concluded that Boehm had merely been negligent in handling the estate funds by relying on his bookkeeper to keep his accounts in order," disbarment was nonetheless the appropriate sanction because "Boehm's contention that his inexperience and poor accounting practices constitute extenuating circumstances is without merit...." *Id.* [446 A.] at 53–54.[1]

This Board concludes that the record in the Maryland proceedings contained clear and convincing evidence that was plainly adequate under the disciplinary rules of Maryland to support the decision of the Court of Appeals finding misappropriation and ordering Respondent's disbarment. The record established unequivocally, even without Respondent's testimony, that for more than a year after receiving the recovery in the *Martin* case, Respondent failed to keep the funds in escrow as he was ethically obligated to do and otherwise failed to account for the client's funds. Contrary to Respondent's contention, the State of Maryland was not required to prove what happened to the money during the period prior to the date that it was first placed in any escrow account.

The District of Columbia also regards any misappropriation or commingling of client's funds with other funds as a breach of the disciplinary rules, regardless of intent. In *In the Matter of E. David Harrison*, 461 A.2d 1034 (D.C.1983) misappropriation by an attorney was defined as "the unauthorized use of clients' funds entrusted to him, including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." The Court then said: "This definition makes clear that improper intent is not an element to be considered in determining whether there has been a misappropriation."

While the District of Columbia does not automatically impose disbarment as the sanction for commingling without intent to misappropriate (as the *Harrison* case shows), the normal remedy for commingling and misappropriation of funds is disbarment. *In re McClellan*, M–51–80 (D.C. 1981); *In re Burka*, 423 A.2d 181 (D.C. 1980); *In re Newsome*, D–34–79 (D.C.1979). Moreover, where bank records establish unequivocally that a client's funds that should be deposited in an escrow account are not in such an account and where the attorney then fails to provide full and adequate explanation, such evidence constitutes adequate proof of intentional misappropriation sufficient to justify disbarment

---

1. *See also, Atty. Grievance Com'n of Md. v. Pattison*, [292 Md. 599], 441 A.2d 328,.331 (Md.1982), where the Court of Appeals of Maryland held that an attorney had misappropriated a client's funds in violation of DR 9–102(A) by making loans of those funds to himself, even though the trial judge found no "intent to steal the monies" and "no intent whatever to deprive the owner permanently of the money involved." In concluding that misappropriation warrants disbarment, despite the absence of any intent to steal, the Maryland Court of Appeals announced in no uncertain terms: "We desire that the message go out loud and clear to the Maryland Bar and to the citizens of Maryland that we shall not tolerate attorneys' misusing of their clients' funds." *Id.* [441 A.2d] at 333.

in the District of Columbia. *Compare In re Burton,* [472 A.2d 831], Nos. M–143–82; 83–492 (D.C. January 11, 1984).

Accordingly, Respondent's contention that the record in the Maryland proceeding did not justify disbarment under Maryland's interpretation of the disciplinary rules is wholly without merit. Similarly, Respondent's further contention that a substantially different discipline would be warranted under the disciplinary rules as administered in this jurisdiction is likewise rejected.

\* \* \*

### V. *CONCLUSION AND RECOMMENDATION*

Although Respondent's conduct in the *Martin* case would alone be sufficient to justify reciprocal disbarment in this jurisdiction, the Board concurs with the Maryland Court of Appeals that "under the sum total of the circumstances" of Respondent's conduct in both the Martin case and the Poynton estate matter, "disbarment is the proper sanction to be imposed."

For the foregoing reasons, the Board recommends that the District of Columbia Court of Appeals impose reciprocal disbarment in this jurisdiction.

> The Board on Professional Responsibility
> By: /s/ J. Randolph Wilson
>    J. RANDOLPH WILSON

All Members of the Board concur in this recommendation.

Dated: June 29, 1984.