**In re James O'DONNELL, Respondent.**

**No. 86–1011.**

District of Columbia Court of Appeals.

Submitted Oct. 28, 1986.

Decided Nov. 26, 1986.

Elizabeth A. Kohlman, Asst. Bar Counsel, and Thomas H. Henderson, Jr., Bar Counsel, Washington, D.C., for petitioner.

James O'Donnell, Washington, D.C., pro se.

Before NEWMAN, TERRY, and ROGERS, Associate Judges.

PER CURIAM:

The Board on Professional Responsibility found respondent had violated DR 1–102(A)(5) for failure to respond to Bar Counsel's inquiries; DR 6–101(A)(3) for neglecting to form a corporation and to file on behalf of the corporation an application for a liquor license within the specified time, and DR 7–101(A)(1) for deliberate and conscious failure to seek the lawful objec-

tives of his clients despite his full awareness of the extent of those objectives. Respondent has not filed a brief before this court. We have reviewed the Report and Recommendation of the Board and find its findings are supported by substantial evidence of record. *In re Morris,* 495 A.2d 1162, 1163 (D.C.1985); D.C. Rules Governing the Bar, Rule XI, § 7(3). Accordingly, we adopt the Board's findings, which are attached as an appendix to this opinion.

The Board has recommended that respondent be suspended for a year and a day, and that he be required to make restitution of the retainer of $1000 to his clients. This court "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted." *In re Morris, supra,* 495 A.2d at 1163; D.C. Rules Governing the Bar, Rule XI, § 7(3). This sanction is in accordance with sanctions imposed in comparable cases. *E.g., In re Roundtree,* 467 A.2d 143, 148 (D.C.1983); *In re Fogel,* 422 A.2d 966 (D.C. 1980).

Accordingly, it is ORDERED that respondent shall be suspended for a year and a day, and shall make restitution to his clients of $1000. This order shall take effect thirty days from the date of this opinion.

*So ordered.*

TERRY, Associate Judge, concurring:

I join in the opinion and order of the court. I write these few additional words to express my concern that the $400,000 judgment against respondent, entered more than two years ago, has apparently not yet been satisfied. Were it not for the existence of that judgment, I would vote to require far greater restitution to the Donnellys than a mere $1,000, which represents only a refund of the retainer they paid to respondent and does not even begin to make them whole.

One of the factors that this court must consider in any reinstatement case is whether the suspended attorney has taken steps to remedy past wrongs and prevent future ones. *In re Roundtree*, 503 A.2d 1215, 1217 (D.C.1985). Respondent should be on notice that if he applies for reinstatement in the bar after his suspension has run its course, whether he has satisfied the outstanding $400,000 judgment before seeking reinstatement may be a matter of substantial importance.

APPENDIX

DISTRICT OF COLUMBIA COURT OF APPEALS

BOARD ON PROFESSIONAL RESPONSIBILITY

Bar Docket Number: 383–85

IN THE MATTER OF JAMES O'DONNELL, RESPONDENT

REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

This matter is before the Board on Professional Responsibility for review of the report of Hearing Committee Number Eight ("the Hearing Committee"), which on April 16, 1986, recommended that Respondent be suspended from the practice of law for a year and a day and that Respondent be ordered to make restitution to his clients in the amount of $1,000.

I. *Background*

John Michael Donnelly and Mark Donnelly retained James O'Donnell to assist them in obtaining an alcoholic beverage ("ABC") license, to incorporate their business, and to provide legal advice concerning a proposed lease agreement. On February 18, 1982, the Donnellys paid O'Donnell a retainer fee of $1,000.

On April 5, 1982, the Donnellys entered into a lease agreement with the St. Charles Hotel. The lease agreement provided for specific time limitations that ran from the date of execution. Specifically, the lease agreement stated that within thirty days of April 5, 1982, the Donnellys were required to incorporate their business, to file an ABC license application, and to obtain financing. The lease agreement provided that a District of Columbia corporation to be formed by the Donnellys had to apply for the ABC license. The lease agreement further provided that if the ABC license was not obtained by July 15, 1982, the St. Charles Hotel would have the right to declare the lease null and void.

O'Donnell had reviewed the lease agreement entered into between the Donnellys and the St. Charles Hotel prior to its execution. O'Donnell also was present at the signing of the agreement on April 5, 1982.

After the execution of the lease agreement, the Donnellys incurred $3,000 worth of expenses in pursuit of the lease agreement, including securing necessary permits and architectural drawings.

The Donnellys periodically telephoned O'Donnell, inquiring as to the status of the matter. In one conversation, O'Donnell stated that "everything had been taken care of." (Tr. 12).[1]

The Donnellys checked with the ABC Board to ascertain whether the license application had been filed by O'Donnell on their behalf. They learned from the ABC Board that the license had not been filed.

The Donnellys thereafter questioned O'Donnell at his home concerning the filing of the ABC license application. O'Donnell indicated that he had spoken with Mrs. Lyon, who denied discussing the matter with O'Donnell. After the Donnellys confronted O'Donnell with Mrs. Lyon's denial, he admitted that he had neither formed a corporation nor applied for the ABC license.

On August 4, 1982, the St. Charles Hotel forwarded the Donnellys a warning letter, indicating that if they did not fulfill their obligations as provided for in the lease

1. The reference is to the transcript of the hearing before the Hearing Committee.

agreement, the St. Charles Hotel would determine that they were in breach of the contract. By letter dated August 19, 1982, the St. Charles Hotel informed the Donnellys that it declared the Donnellys in breach of the contract.

O'Donnell was sent copies of the August 4 and 19 letters from the St. Charles Hotel.

The Donnellys contacted O'Donnell after receipt of the August 4 letter from the St. Charles Hotel. On August 12, 1982, the Donnellys sought out O'Donnell at his home and had him accompany them to the requisite offices for filing the articles of incorporation and the ABC license application.

Nonetheless, the St. Charles Hotel declared the lease agreement with the Donnellys null and void because of their failure to obtain an ABC license within the time period specified in the lease agreement.

The Donnellys filed a civil suit against O'Donnell in the Superior Court of the District of Columbia, alleging breach of contract and malpractice. *Donnelly v. O'Donnell,* CA 2777–83 (Superior Ct. filed Mar. 9, 1983). O'Donnell failed to present a defense, and on September 5, 1984, the court entered a default judgment in the amount of $400,000, plus interest, after an *ex parte* hearing on the issue of damages. At the time of the disciplinary hearings, O'Donnell had not satisfied the *Donnelly* judgment.

After the Donnellys filed their complaint with Bar Counsel, Bar Counsel forwarded letters to O'Donnell, requesting that he reply to the complaint. O'Donnell failed to respond to those letters. An Assistant Bar Counsel also telephoned O'Donnell to inquire as to whether he would file an answer. O'Donnell indicated that he would do so. However, he never did file a response to the complaint.

The Hearing Committee conducted an evidentiary hearing on February 27, 1986.[2]

The Committee concluded that: (1) O'Donnell violated DR 1–102 (A)(5) (con-

duct prejudicial to the administration of justice) by failing to respond to Bar Counsel; (2) O'Donnell violated DR 6–101(A)(3) (neglect) by failing to act within the specified time periods established by the lease agreement; and (3) O'Donnell violated DR 7–101(A)(1) (failure to seek the client's lawful objectives) by deliberately failing to assist his clients. The Committee recommended that O'Donnell be suspended from the practice of law for a year and a day and that he be ordered to make restitution of the $1,000 retainer.

Neither O'Donnell nor Bar Counsel filed exceptions to the Hearing Committee's report.

## II. *The Violations*

### A. *DR 1–102(A)(5): Conduct Prejudicial to the Administration of Justice*

Bar Counsel alleged, and the Hearing Committee found, that O'Donnell engaged in conduct prejudicial to the administration of justice by failing to respond to Bar Counsel's inquiries in the course of investigating the Donnellys' complaint against O'Donnell. Bar Counsel forwarded three letters to O'Donnell on October 4, 21, and 31, 1985, requesting that he respond to the complaint filed against him with Bar Counsel by the Donnellys. O'Donnell testified at the hearing that he had received Bar Counsel's three letters. In addition, on November 4, 1985, the Assistant Bar Counsel assigned to the case spoke by telephone with O'Donnell, asking him to submit a response. He indicated to the Assistant Bar Counsel that he would file a response. However, O'Donnell failed to file any response.

The Board is of the opinion that the findings of the Hearing Committee should be sustained with respect to DR 1–102(A)(5). O'Donnell admitted at the hearing that he received Bar Counsel's letters concerning the complaint. Further, he told the Assistant Bar Counsel in their tele-

---

2. The Hearing Committee conducted its evidentiary hearing pursuant to Board Rule 7.5 because Respondent failed to file an answer to Bar Counsel's petition.

phone conversation that he would respond to the complaint, but he did not do so. The failure to respond to Bar Counsel's inquiries constitutes a violation of DR 1–102(A)(5). *See In re Lieber*, 442 A.2d 153, 155–56 (D.C.1982) (Respondent found to have violated DR 1–102(A)(5) by failing to respond to Bar Counsel's letters concerning a complaint); *In re Tucker*, M–13–75/S–56–78 (D.C.Nov. 13, 1978).

### B. *DR 6–101(A)(3): Neglect*

Bar Counsel alleged, and the Hearing Committee found, that O'Donnell neglected the legal matter entrusted to him by the Donnellys. O'Donnell reviewed the lease agreement before the Donnellys entered into that agreement with the St. Charles Hotel. Thus, O'Donnell was aware of what the lease required the Donnellys to do within specified time periods in order to fulfill their obligations under the lease agreement. The Donnellys retained O'Donnell to assist in satisfying the terms of the lease agreement: to form a District of Columbia corporation and to file on behalf of that corporation an ABC license application. O'Donnell took no action on either matter within the specified time periods. He failed to file articles of incorporation and failed to file an ABC license application within thirty days of April 5, 1982, the date the lease agreement was executed.[3] O'Donnell had an obligation to either act within the time limitations or to withdraw as the Donnellys' counsel. He did neither. O'Donnell's failure to act with respect to the formation of the corporation and the filing of the ABC license application within the specified time periods constitutes neglect of a legal matter entrusted to him.

### C. *DR 7–101(A)(1): Failure to Seek the Lawful Objectives of the Client*

Bar Counsel alleged, and the Hearing Committee found, that O'Donnell failed to seek the lawful objectives of his clients.

The scope of O'Donnell's representation of the Donnellys was clear. The Donnellys retained O'Donnell to assist them in satisfying the terms of the lease agreement, *i.e.,* filing articles of incorporation and an ABC license application. O'Donnell failed to make any timely efforts to assist the Donnellys with respect to these matters. O'Donnell persisted in his inaction even after the Donnellys telephoned him and met with him to inquire as to the status of these matters. O'Donnell's inaction was coupled with an awareness of his obligations, and he thus made a deliberate and conscious choice not to pursue his client's objectives in violation of DR 7–101(A)(1). *See In re Stanton*, 470 A.2d 272, 277 (D.C. 1983).

### III. *Sanction*

The Board has concluded that the record contains clear and convincing evidence that O'Donnell violated DRs 1–102(A)(5), 6–101(A)(3), and 7–101(A)(1). The Board also adopts the Hearing Committee's recommended sanction of a suspension of one year and a day and restitution of $1,000.

O'Donnell's neglect of the Donnellys' matter and intentional failure to fulfill the Donnellys' lawful objectives constitute serious misconduct. He further failed to cooperate with Bar Counsel. O'Donnell's inaction caused significant prejudice to the Donnellys, including the loss of their lease at the St. Charles Hotel.

The Hearing Committee also properly considered O'Donnell's prior discipline in determining the appropriate sanction. On January 12, 1978, O'Donnell received a private reprimand for violating DR 1–102(A)(5) by failing to respond to Bar Counsel's inquiries; DR 6–101(A)(3) by neglecting a legal matter; DR 7–101(A)(2) by intentionally failing to carry out a contract of employment; DR 7–101(A)(3) by intentionally prejudicing a client; DR 9–102 [DR

---

3. On August 12, 1982, O'Donnell filed articles of incorporation and an ABC license application. This action was undertaken in response to the August 4 warning letter from the St. Charles Hotel and with prompting from the Donnellys. O'Donnell, however, undertook no efforts to negotiate an extension of the lapsed time limits set forth in the lease agreement.

9–103] (A) by failing to deposit client funds in an identifiable bank account; DR 9–102 [DR 9–103] (B)(3) by failing to maintain complete records of client monies and failing to render appropriate accounts to the client; and DR 9–102 [DR 9–103] (B)(4) by failing to promptly pay to the client his money. Except for the violations involving mishandling a client's funds, the misconduct underlying O'Donnell's prior private reprimand is similar to the instant case. O'Donnell's conduct suggests a callous indifference to his ethical obligations to his clients. The Board believes that O'Donnell's violations demonstrate a need to prove fitness prior to his reinstatement to the practice of law.

In *In re Fogel*, 422 A.2d 966 (D.C.1980), the Court suspended the respondent for a year and a day for neglect of an appeal, intentional failure to carry out a contract of employment and to seek the objectives of his client (to the prejudice of his client), and dishonesty. Respondent failed to make certain filings on behalf of his client in a civil action in the Superior Court and failed to appear for certain court dates; he later admitted his excuses for nonattendance were fictional. The Superior Court proceeding ended in a dismissal of his client's complaint. Respondent noted an appeal but thereafter continued to fail to file pleadings and made affirmative misrepresentations to court personnel. Respondent also had a prior disciplinary record for neglecting a matter. The decision in *Fogel* supports the conclusion that O'Donnell should be suspended for a year and a day.

The Board also recommends that the Court order O'Donnell to make restitution to the Donnellys in the amount of $1,000, a sum equal to the retainer that they paid to O'Donnelly. O'Donnell's neglect and intentional failure to seek his client's objectives caused the Donnellys to lose their lease. They thus are entitled to a refund of the $1,000 retainer fee that they paid to O'Donnell. *See In re Taylor*, [511 A.2d 386] No. 86–274 (D.C. May 20, 1986) (Court ordered attorney to make restitution of fee paid by client where attorney's neglect caused dismissal of client's case); *In re Jamison*, Nos. 83–1399 & 83–1422 (D.C. June 20, 1984); *In re Roundtree*, 467 A.2d 143, 148 (D.C.1983).

For reasons set forth above, the Board recommends that the Court enter an order suspending O'Donnell from the practice of law for a year and a day and requiring that he make restitution to the Donnellys in the amount of $1,000.

BOARD ON PROFESSIONAL RESPONSIBILITY

By: /s/ George W. Miller

GEORGE W. MILLER

Date: June 5, 1986

All members of the Board concur in this Report and Recommendation.