In re Harry Toussaint
ALEXANDER, Respondent.

No. 85–701.

District of Columbia Court of Appeals.

Submitted April 3, 1986.

Decided April 28, 1986.*

Thomas H. Henderson, Jr., Bar Counsel, and Wallace E. Shipp, Jr., Deputy Bar Counsel, Washington, D.C., were on the brief for petitioner.

Harry Toussaint Alexander, Washington, D.C., pro se.

Before NEBEKER, BELSON, and TERRY, Associate Judges.

PER CURIAM:

We review here a report and recommendation of the Board on Professional Responsibility finding that respondent Harry Toussaint Alexander violated DR 6–101(A)(3) by neglecting legal matters entrusted to him, and DR 6–101(A)(2) by handling legal matters without preparation adequate under the circumstances. The Board recommends that respondent be suspended for a year and a day.[1] We accept the Board's findings and adopt the disposition it recommends.

The charges of disciplinary rule violations stemmed from respondent's handling of a series of cases on behalf of Mr. Vincent Oliver. Respondent first successfully represented Oliver in a criminal proceeding arising from Oliver's dismissal as Deputy Director of the Office of Civil Rights of the Department of Transportation. Respondent then filed four civil law suits on Oliver's behalf.

In *Oliver v. Bell*, C.A. 79–2514 (D.D.C. Dec. 31, 1981), respondent submitted what the court found to be a seriously defective complaint in that it failed to allege personal responsibility, failed to include alleged overt acts, failed to meet the specificity requirements of FED.R.CIV.P. 8(a)(2), and

---

* The decision in this case was originally released as a Memorandum Opinion and Judgment. It is being published pursuant to this court's order granting a motion for publication.

1. The Board's Report and Recommendation is attached as an appendix to this opinion.

sought damages not available for actions that are allegedly arbitrary and capricious under the Administrative Procedure Act.

In *Oliver v. Goldschmidt*, C.A. 80–458 (D.D.C. Dec. 31, 1981), respondent filed an inadequate complaint drafted by Oliver. He also failed to serve six of the defendants at all, and improperly served twenty of the remaining twenty-two defendants.

In *Oliver v. Merit Systems Protection Board*, C.A. 80–1918 (D.D.C. Oct. 9, 1981), respondent once more filed a complaint drafted by Oliver, even though he knew that Oliver's claims were "improper," and failed to obtain effective service of process on the defendants sued in their personal capacities. After Oliver's complaint in the *Merit Systems Protection Board* suit had been dismissed, respondent filed an untimely motion for reconsideration of the order of dismissal.

Finally, in *Oliver v. Equal Employment Opportunity Commission*, C.A. 81–38 (D.D.C., complaint filed Feb. 17, 1981), respondent filed a complaint exactly as furnished by Oliver, even though he knew the claims were "improper."

Hearing Committee No. 10 found that respondent had violated Disciplinary Rules 6–101(A)(2) (inadequate preparation) and (3) (neglect). Upon review of the Hearing Committee's report, the Board was satisfied that the Committee's factual findings were supported by substantial evidence in the record sufficient to meet the clear and convincing evidentiary standard. The Board also concluded that the factual findings established a violation of Disciplinary Rules 6–101(A)(2) and (3).

Before this court, respondent raises several objections to the Board's report and recommendation. Respondent asserts that the Hearing Committee's findings and the Board's report are unsupported by "the requisite standard of evidence." Our standard of review requires that this court "shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence." D.C. Bar R. XI § 7(3); *In re Dwyer*, 399 A.2d 1, 11 (D.C.

1979). We disagree with respondent's contention and adopt the Board's conclusions concerning the Hearing Committee's fact finding. Moreover, we are satisfied that the Board correctly concluded that the facts underlying the charges established violations of Disciplinary Rules 6–101(A)(2) and (3).

■ Respondent also contends that Oliver's conduct toward him in these cases was vindictive, and therefore the charges against him should be dismissed. It is the nature of respondent's legal representation, however, not Oliver's actions once the complaint had been lodged, that is the basis for the discipline we impose today. The Bar's disciplinary process insulates members of the Bar from unfounded complaints of clients; it is Bar Counsel who decides whether to initiate an investigation, and a Hearing Committee, composed of at least two members of the District of Columbia Bar, that initially makes findings on an attorney's alleged violations of the Code. D.C. Bar R. XI §§ 5 and 7. We perceive no basis for the implicit argument that Bar Counsel, the Hearing Committee, and the Board were swayed by Oliver's attitude toward respondent.

■ Respondent asserts that Bar Counsel failed to return documents he supplied, and thus denied him his right to present a full and complete defense. The record shows, however, that respondent failed to use those procedures available to resolve such disputes. *See* Board Rule 3.1 (disputes over documents resolved after filing of petition). Having failed to use that process, respondent cannot now complain that his opportunity to present a defense was compromised.

■ Finally, respondent argues that because he withdrew as Oliver's counsel while Oliver's cases were still pending, Oliver's rights were fully protected and thus no neglect can be charged to respondent. The record, however, supports the Board's determination that he had violated the applicable disciplinary rules *during* the peri-

od of representation. Neglect and inadequate preparation during a period of representation are not cured by the lawyer's eventual withdrawal.[2]

We turn then to the question of the appropriate sanction for respondents' violations of the Disciplinary Rules. When reviewing recommended sanctions, D.C. Bar R. XI § 7(3) requires that this court "shall adopt the recommended disposition ... unless to do so would foster a tendency towards inconsistent dispositions or would otherwise be unwarranted." The Board recommended that respondent be suspended for a year and a day concurrent with another suspension. (Respondent is at this time suspended from practice for a period of 2 years that will encompass the suspension the Board recommends here. *In re Alexander*, 496 A.2d 244 (D.C.1985).)

■ ·We perceive no reason to reject the Board's recommended sanction. The recommended sanction is not inconsistent with dispositions we have reached in other cases involving similar violations. *See, e.g., In re Roundtree*, 467 A.2d 143 (D.C.1983) (attorney neglected clients, and committed other violations; had record of previous discipline; suspended for a year and a day); *In re Fogel*, 422 A.2d 966 (D.C.1980) (same). Moreover, imposing the recommended sanction is in no sense unwarranted. This is not the first time respondent has been called upon to account for his actions as an attorney; as we have noted, he currently is suspended for 2 years for neglect and other violations. *In re Alexander*, 496 A.2d at

252, 254–61. Additionally, respondent has previously received three informal admonitions, and had been suspended for 90 days before the 2 year suspension was imposed. If suspended for more than a year, respondent must demonstrate proof of rehabilitation before being admitted to practice here in the District of Columbia, D.C.App. Bar R. XI § 3(2); by requiring such proof, this court will carry out its obligation to protect the public, the Bar and the courts. *In re Smith*, 403 A.2d 296, 303 (D.C.1979). We direct that respondent be suspended for a year and a day, that suspension to run concurrent with the 2 year suspension. This order of suspension shall be effective 30 days from the date of this opinion. D.C. Bar R. XI § 19(3).

*So ordered.*

*Appendix*

### DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

Bar Docket No. 384–81

IN THE MATTER OF HARRY TOUSSAINT ALEXANDER

### REPORT AND RECOMMENDATION

This matter is before the Board on the Report and Recommendation of Hearing Committee No. 10 which concluded, after an evidentiary hearing, that Respondent violated two of the Disciplinary Rules, *i.e.*, DR 6–101(A)(2) (handling a legal matter without adequate preparation) and DR 6–101(A)(3) (neglect of a legal matter).[1] The

---

**2.** Respondent raises two other contentions that he failed to raise before the Board; he argues that (1) because the charges against him were first heard by Hearing Committee No. 6, whose recommendations were vacated upon respondent's motion charging that one of its members had a conflict of interest, and then heard by Hearing Committee No. 10, respondent has been put in jeopardy twice, in violation of the constitutional prohibition against double jeopardy, and (2) the Hearing Committee and Board's conduct was motivated by racial, personal, age, and political animus. This court will not address objections that could have been, but were not, raised prior to judicial review. *In re James*, 452 A.2d 163, 169 (D.C.1982). There are no

compelling facts in the record or applicable legal precedents which require that we deviate from that rule. We have, nevertheless, examined these contentions and find the first devoid of legal merit and the second entirely unsupported by the record. In addition, with respect to the second, respondent failed to follow Board Rule 7.18 regarding challenges.

**1.** This matter was originally heard by Hearing Committee No. 6, but in an order dated April 23, 1984, the Board granted Respondent's motion alleging that one member of Hearing Committee No. 6 had a conflict of interest and remanded the proceeding to Hearing Committee No. 10

Hearing Committee rejected all other alleged violations relating to DR 7–101(A)(1) (intentional failure to seek lawful objectives); DR 7–101(A)(2) (intentional failure to carry out employment contract); and DR 2–110(A)(3) (failure to return unearned portion of fee).

## I. *THE EVIDENCE OF RECORD*

The Respondent is charged herein with alleged misconduct in handling four civil employment discrimination cases on behalf of his client, Vincent T. Oliver. The complaint in each of these four civil cases was filed in the United States District Court for the District of Columbia and revolved around Mr. Oliver's discharge from his position as an employee of the Department of Transportation (DOT).

### A. *Events Leading to the Termination of Mr. Oliver's Employment*

The underlying dispute in this case evolved from intense friction that developed between Mr. Oliver and his superiors at DOT where he was employed as Deputy Director of the Office of Civil Rights. In less than two years after Mr. Oliver's initial employment, he was discharged by the then Secretary of DOT for alleged failures to perform various duties and to carry out direct instructions of his superiors. This discharge was ultimately overturned by the Civil Service Commission (now Merit Systems Protection Board), and Mr. Oliver then resumed his employment at DOT pursuant to the order of reinstatement. In the meantime, the Office of Civil Rights at DOT had a new Director, Ms. Ellen Finegold, and there developed almost immediately a serious dispute between Mr. Oliver and Ms. Finegold concerning work assignments which Mr. Oliver apparently refused to perform.

This dispute over work assignments ultimately led Ms. Finegold to initiate steps to discharge Mr. Oliver for the *second* time. This in turn provoked on September 22, 1978 a violent confrontation with Mr. Oliver in which Ms. Finegold and a co-worker ended up "sprawled out" on the office floor. As a result of this incident, Mr. Oliver was charged with criminal assault, and he retained Respondent herein as defense counsel.

In the ensuing criminal proceeding, Mr. Oliver testified that he had been attacked by Ms. Finegold and that his conduct in the violent confrontation was in self-defense. The trial ended on March 7, 1979 when the jury returned a verdict of not guilty. Mr. Oliver was estatic, and even reverent, in his praise of Respondent's abilities as a lawyer, and announced "[w]e have only just begun." [2]

Mr. Oliver then retained Respondent in connection with several administrative complaints filed by Mr. Oliver with DOT alleging that his second discharge in June 1979 was motivated in part by racial or political discrimination and was therefore unlawful. In the administrative proceedings, Mr. Oliver waived his right to testify in an evidentiary hearing and relied instead on the allegations in his complaints and the legal argument that the jury's verdict of acquittal in the criminal proceeding was *"res judicata"* of his version of the violent altercation.

The Administrative Law Judge (ALJ) rejected this legal argument and made Findings of Fact, based on testimony and sworn statements of several eye witnesses, that Mr. Oliver was the aggressor and struck both Ms. Finegold and her co-worker with sufficient force to knock them to the floor. The ALJ also found that the charge of racial discrimination was not supported by the evidence and that the charge of politi-

---

for a complete *de novo* hearing. The Board's Report is based solely on the record and report of proceedings before Hearing Committee No. 10.

2. In a letter dated March 7, 1979, Mr. Oliver wrote to Judge Alexander: "I am still enjoying

the after-glow following that magnificent legal victory, so brilliantly planned and executed by you during 6 days of the most powerful human capability I have ever experienced in all of my 53–years. We have only just begun." *See* R.CX–5, in Hearing on August 22, 1984.

cal discrimination was totally baseless. Based on these findings, the ALJ entered a decision upholding the termination of Mr. Oliver's employment at DOT for the second time.

On July 18, 1980, the decision of the Administrative Law Judge was adopted by the Merit System Protection Board (MSPB) and constituted the final order in the administrative proceedings involved. In this disciplinary case, Respondent is not charged with any misconduct in these administrative proceedings before DOT or MSPB.

B. *Four Civil Lawsuits in Which Respondent's Alleged Misconduct Occurred.*

The Respondent is charged with misconduct in handling four civil lawsuits on behalf of Mr. Oliver. Since Mr. Oliver's second discharge by DOT was the focal point of each of these lawsuits, all four of them were treated as related cases and assigned to Judge Norma Johnson of United States District Court for the District of Columbia. A brief description of these lawsuits is set out below:

1. *Oliver v. Bell,* CA 79–2514 (complaint filed 9/19/79). The Complaint in this lawsuit was filed a few months after Mr. Oliver had been acquitted of criminal charges, and this was ten months prior to the final decision of the Merit System Protection Board in the administrative proceedings. The lawsuit was against 12 present or former employees of the Department of Justice, Department of Transportation and the District of Columbia, plus three members of the Metropolitan Police Department. The allegations of the complaint asserted three main claims: (1) that the criminal prosecution of Mr. Oliver by the District of Columbia had been conducted allegedly in bad faith pursuant to a conspiracy; (2) that certain of the DOT defendants had made defamatory statements against Mr. Oliver; and (3) that DOT's termination of Mr. Oliver's employment was arbitrary and capricious under the Administrative Procedure Act.

In an order and opinion of December 31, 1981, Judge Johnson granted a motion to dismiss the complaint under F.R.Civ.P. Rule 12(b) as to all three of the alleged claims: First, the claim for alleged bad faith prosecution of the criminal case was based solely on "vague and conclusory allegations" that did not include any alleged overt acts and totally failed to meet the specificity requirements of F.R.Civ.P. 8(a)(2), and this claim was also legally defective as to some of the federal officials because there was no allegation whatsoever to show their personal responsibility for any of the alleged illegal acts of subordinates. Second, as to the defamation claim, the federal defendants had absolute immunity insofar as the claim was based on the common law tort of defamation, and had a qualified immunity for any tort based on an alleged constitutional violation. Third, the claim for monetary damages for "arbitrary and capricious action" was improper because no such claim is allowed under the Administrative Procedure Act and, assuming *arguendo* that this claim was also predicated on an alleged due process violation of the Fifth Amendment, the court refused to imply a constitutional damage remedy.[3]

The Hearing Committee found that Respondent, or someone working at his direction, prepared the complaint in the *Bell* case based on information supplied by Mr. Oliver. There was no evidence concerning

---

**3.** The court's opinion and order appear in the record herein as Bar Exhibit 10 (BX–10). The court's order granting the motion to dismiss was limited to the federal defendants. However, the court's opinion noted that the District of Columbia defendants were expected soon to submit a motion for summary judgment. While the record in this disciplinary proceeding does not reveal the disposition of the complaint against the District of Columbia defendants, Judge Johnson's opinion stated unequivocally that "plaintiff's allegation that his prosecution by the District of Columbia was conducted in bad faith must be dismissed for failure to state a claim. . . ." BX 10, at p. 2.

the time devoted to preparing the complaint. Nor did Respondent attempt to provide any explanation of possible legal theories on which the complaint could have been sustained.

2. *Oliver v. Goldschmidt*, CA 80–0458 (complaint filed 2/13/80). This lawsuit was commenced five months prior to the final decision of the Merit System Protection Board in the administrative proceedings. The defendants were 28 present and former DOT employees who were sued in their official and individual capacities for alleged racial discrimination in employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The complaint also included alleged violations of the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution.

In an opinion and order dated December 31, 1981, Judge Johnson granted the defendants' motion for partial judgment on the pleadings and further ruled the suit could proceed only against the Secretary of DOT in his official capacity based on certain conduct in two of the DOT administrative proceedings. *See* BX–12. Judge Johnson's opinion described the complaint in this lawsuit as "woefully deficient", because it did "nothing more than list the name, race, sex, citizenship and position of 22 of the 28 defendants" and contained only "vague and conclusory allegations against the other six defendants." For these reasons, Judge Johnson concluded that there was a complete "failure to indicate why the pleader is entitled to relief" in any of the claims against government officials sued in their individual capacities.

Moreover, Judge Johnson ruled that this lawsuit was time-barred insofar as it was based on action in those administrative proceedings wherein final DOT action had been taken on November 30, 1979, because no appeal to the Equal Employment Opportunity Commission (EEOC) had been filed within the applicable 15-day period and because this lawsuit in federal court was not commenced within the applicable 30-day period following the orders entered in the administrative proceedings.

Judge Johnson also dismissed the complaint against several defendants for lack of service of process or insufficient service of process. Six of the defendants were not served by *any means* of process. Of the remaining 22 defendants, 20 were dismissed because of insufficient service of process. For these 20 defendants, the complaint and summons had apparently been served on DOT employees authorized to accept service on behalf of the named DOT officials in matters concerning their official capacities, but not in matters where, as here, they were being sued in their individual capacities. Judge Johnson therefore dismissed the lawsuit as to these 20 defendants for the reasons set out in her opinion in *Oliver v. MSPB*, which relied on the authority of *Stafford v. Briggs*, 444 U.S. 527, 100 S.Ct. 774, 65 L.Ed.2d 1 (1980), and *Lamont v. Haig*, 590 F.2d 1124 (D.C.Cir. 1978).

Evidence at the disciplinary hearing indicated that the complaint in *Oliver v. Goldschmidt* was prepared in large part, if not entirely, by Mr. Oliver. Then it was filed by Respondent with little or no revision or even review, of its substance. The testimony of Respondent's Office Manager indicated that the complaint as drafted by Mr. Oliver may have been retyped in Respondent's office, apparently to satisfy style or form requirements of the court, and that Mr. Oliver was "upset" and objected.

3. *Oliver v. The Merit System Protection Board*, CA 80–1918 (complaint filed 8/1/80). The thrust of this lawsuit was that MSPB, in its order of July 18, 1980, had violated Mr. Oliver's Constitutional and statutory rights by upholding the administrative decisions of DOT to terminate employment. The complaint asked for a declaratory judgment, for a judicial order directing the "appropriate authority" to initiate criminal prosecution of members of the Merit Board, and to award $6 million in compensatory and punitive damages as well as counsel fees.

On October 9, 1981, Judge Johnson entered a final judgment, in the form of a memorandum and order, granting the defendants' motion to dismiss the entire case because of numerous legal deficiencies: insufficient service of process on defendants sued in their personal capacities; absolute immunity of the defendants for conduct in performance of their administrative or adjudicatory duties; sovereign immunity of MSPB and officials thereof; and failure to state a claim. The request for a court-ordered criminal prosecution of the defendants was denied by Judge Johnson because such an order would violate the Constitutional Doctrine of Separation of Powers.[4]

The complaint in this case was also prepared by Mr. Oliver and filed by Respondent with little or no revision or review for substantive matters. According to the testimony of Respondent's Office Manager, Mr. Oliver had discovered that some changes for style or form had been made in this complaint and "was upset and said he didn't want us to retype them", and thereafter "they weren't" retyped. Tr. 266.

After Judge Johnson had entered the judgment on October 9, 1981 dismissing the entire complaint, Respondent and Mr. Oliver disagreed on the appropriate step to take thereafter. Three possibilities were apparently considered: filing an amended complaint to cure the pleading defects noted by Judge Johnson; filing a motion for reconsideration; or possibly filing an appeal from the judgment. In fact, Respondent did nothing until October 26, 1981, which was the date he filed a motion for enlargement of time in which to file a motion for reconsideration. This motion was denied on December 4, 1981 because of the untimeliness of both the motion for enlargement of time and the underlying motion for reconsideration. Under Fed.R. Civ.P. 59(e), a motion to amend a judgment must be filed within ten days after entry of the judgment, and this rule applied because the underlying motion for reconsideration amounted to a motion to alter or amend the judgment entered by Judge Johnson on October 9, 1981. Thus, the motion for enlargement of time related to an untimely motion for reconsideration that "would be a nullity", and the enlargement motion was therefore denied.

Prior to the court's order of December 4, 1981 denying the motion for enlargement of time to file a motion for reconsideration, Respondent on November 6, 1981 filed a motion for leave to file an amended complaint. Three days later, on November 9, 1981, Respondent filed two additional motions, *i.e.*, a substitute motion for leave to file an amended complaint, and a motion for reconsideration of the judgment of dismissal entered on October 9. Thereafter, on January 20, 1982, Judge Johnson entered an order that on its face addressed the substitute motion for leave to file an amended complaint. However, this order was apparently intended to dispose of all then pending motions inasmuch as it appeared "to the Court that there is no discernible basis for vacating its [prior] judgment of dismissal [and] ... the presentation of theories of relief in *seriatim* fashion is antithetical to the requirement that the Federal Rules of Civil Procedure 'be construed to secure the just, speedy and inexpensive determination of every action.' "

4. *Oliver v. EEOC, et al.*, CA 81–038 (complaint filed 2/17/81). This lawsuit requested a declaratory judgment and injunctive relief from an EEOC decision that sustained DOT's orders in some of the administrative proceedings initiated by Mr. Oliver. The complaint alleged that plaintiff's claim was brought pursuant to Title VII of the Civil Rights Act of 1964 for alleged violations by EEOC of both Title VII and regulations pursuant thereto, as well as violations of the Fifth Amendment and other Federal statutes.

As in both the *Goldschmidt* and *Merit System Protection Board* cases, the complaint in this suit against EEOC was pre-

---

4. The court's opinion and order are included in     the record herein as BX–14.

pared by Mr. Oliver, and was filed by Respondent exactly as furnished by Mr. Oliver. As described in the Hearing Committee's Report, the complaint is a "long, rambling recitation of seemingly irrelevant or conclusory allegations." Hearing Comm. Report, at 15.[5]

The record in this disciplinary proceeding does not indicate the disposition of this lawsuit. The record does include an order entered by Judge Johnson on November 2, 1981 that established March 1, 1982 as the discovery cut-off date and required any dispositive motions to be filed on or before March 15, 1982.

### C. *Respondent's Withdrawal From the Four Civil Lawsuits.*

Mr. Oliver's exuberant admiration of Respondent's legal abilities reached its zenith shortly after the successful defense in the criminal assault proceeding, but Mr. Oliver's enthusiasm began to wane after the civil lawsuits had been filed. Then, when Mr. Oliver received the court's decisions dismissing or drastically curtailing the claims in the *Goldschmidt, Bell* and *MSPB* cases, the relationship between Respondent and Mr. Oliver deteriorated rapidly and soon became hostile.

Finally, on March 26, 1982 Respondent filed a motion to withdraw from all four cases. In a letter to the court dated April 1, 1982, Mr. Oliver objected to the withdrawal motion on the ground that the motion was a "surprise and without warning" and on the further ground that Mr. Oliver did not have other counsel at the time. Nonetheless, a few weeks later, the court granted the motion and Respondent was therefore allowed to withdraw from all four civil cases.

Thereafter, a dispute developed between Respondent and Mr. Oliver concerning the

latter's request for a refund of $12,700 of the amount previously paid to Respondent for handling the civil litigation. Respondent did not refund any sums pursuant to Mr. Oliver's request. However, the Hearing Committee concluded that Bar Counsel did not establish any of the alleged violations of the Disciplinary Rules relating to this fee dispute, and Bar Counsel has not filed an exception to the Hearing Committee's Report on that point. Accordingly, it is unnecessary for the Board to consider the details of that aspect of the controversy between Respondent and Mr. Oliver.

### II. *RESPONDENTS OBJECTIONS TO VIOLATIONS OF DISCIPLINARY RULES FOUND BY HEARING COMMITTEE*

In its Report, the Hearing Committee concluded that Bar Counsel, by clear and convincing evidence, had established violations by the Respondent of DR 6–101(A)(2) (inadequate preparation) and DR 6–101(A)(3) (neglect). It was the Committee's view that the three complaints addressed in Judge Johnson's substantive rulings were so "poorly pleaded and legally deficient [that] ... [n]o lawyer who was competent in trial work and civil rights matters ... could have filed such pleadings and allowed the claims therein to be dismissed without a lack of preparation and neglect." Hearing Comm. Report, at 16.

In a brief filed with the Board, "Respondent now argues six grounds" for overturning the Hearing Committee's Findings and Recommendation. Four of these grounds boil down to a contention that the Committee's factual findings must be set aside for lack of substantial evidence in the record as a whole, as required by Board

---

**5.** The complaint requested relief consisting of— (1) a declaratory judgment that the decision of the EEOC was in violation of the Fifth Amendment and further declaring that certain regulations concerning Mr. Oliver's administrative proceedings were unconstitutional; (2) a judgment vacating the EEOC decision and ordering

a trial *de novo* in six of the administrative proceedings; (3) a writ of mandamus directing DOT to reinstate Mr. Oliver with full back pay and benefits; and (4) injunctive relief to expunge the record of all adverse actions against Mr. Oliver and to prohibit racial discrimination; and (5) an award of attorney's fees.

Rule 12.6.[6]   Another ground for objection in Respondent's brief is that the Committee improperly "assumed" the correctness of Judge Johnson's various rulings and thereby "usurped" the authority of the Court of Appeals to determine whether or not those rulings were correct.[7] Respondent's sixth and final objection is that the Hearing Committee's recommendation on sanctions is "disappropriate" to the violations found by the Committee and would foster dispositions inconsistent for comparable misconduct.

For the reasons set forth in the remainder of this Report, the Board is not persuaded by any of these objections.

### III. *RESPONDENT'S VIOLATIONS OF THE DISCIPLINARY RULES*

The Board has reviewed the record herein and is satisfied that the Hearing Committee's factual findings are supported by substantial evidence in the record as a whole sufficient to meet the applicable clear and convincing standard. These facts are briefly summarized in Section I of this Report and are essentially undisputed.

The Board also concludes that these factual findings clearly establish a violation of DR 6–101(A)(3) (neglect) and provide adequate proof of a violation of DR 6–101(A)(2) (inadequate preparation) as well.

#### A. *Neglect in Violation of DR 6–101(A)(3)*

The Hearing Committee concluded that Respondent neglected a legal matter entrusted to him and thereby violated DR 6–101(A)(3). Respondent's neglect was established by evidence related to the untimely motions following the court's order of dismissal in *Oliver v. Merit System Protec-*

*tion Board,* by evidence showing Respondent's failure to effectuate service of process in several of the civil lawsuits, and by Respondent's failure to give any credible explanation for such omissions. Hearing Comm. Report, pp. 19–20.

The Board concurs that this evidence establishes neglect in violation of DR 6–101(A)(3). As the Hearing Committee noted, "untimeliness ... is a classic form of neglect", particularly where, as here, such untimeliness operates to preclude any further effort to patch up prior legal deficiencies. In *Oliver v. Merit System Protection Board,* the court's order and judgment dismissing the lawsuit was entered on October 9, 1981. Respondent was well aware that his client, Mr. Oliver, was dissatisfied with the defeat reflected in this judgment and was anxious to take appropriate steps to seek relief from the judgment, either by requesting reconsideration, or by filing an amended complaint, or possibly by filing an appeal. Yet, Respondent allowed the time to fritter away, and his client was unable to pursue any possible avenue of relief. The following timetable sets out the details:

October 9, 1981: Judgement entered dismissing the entire lawsuit.

October 19, 1981: Final date of 10–day period under FED.R.CIV.P. 59 for filing a motion to alter or amend judgment, or for new trial or reconsideration of judgment of October 9.

October 26, 1981: Respondent filed motion for enlargement of time in which to file a motion for reconsideration.

November 6, 1981: Respondent filed motion for leave to file amended complaint.

---

6. In Respondent's brief to the Board, these four objections are numbered (2) "... not a shred of evidence presented to demonstrate that the complaints could have been cured; (3) ... absence of expert testimony or other testimony [on] ... the standard of care of other competent attorneys; (4) the evidence ... fell far short of the kind of convincing proof essential ...; (5) the Hearing Committee's resolution of conflicting testimony and factual findings lacked substan-

tial support of evidence in the record...." Respondent's Brief at pp. 1–2.

7. This objection is numbered "(1)" in Respondent's Brief and asserts that the Hearing Committee "erred in ... assuming the correctness of the [district] court's dismissal of his client's complaints."

November 8, 1981: Final date of 30–day period in which to appeal from judgment of October 9.

November 9, 1981: Respondent filed substitute motion for leave to file an amended complaint.

November 9, 1981: Respondent filed motion for reconsideration directed to judgment of October 9, 1981.

December 4, 1981: Court entered order denying motion for enlargement of time in which to file motion for reconsideration.

January 20, 1982: Court entered order denying substitute motion for leave to file an amended complaint.

Respondent's neglect with respect to service of process was amply established by the evidence concerning *Oliver v. Goldschmidt.* There, the complaint named 28 defendants. Yet, six of the defendants were not served by any means of process whatsoever. Moreover, 20 of the remaining 22 defendants were dismissed for insufficient service of process because the only attempted service was on DOT employees authorized to accept service on behalf of DOT officials sued in their official capacity rather than in their personal capacity.[8]

In sum, the evidence of Respondent's neglect is not only clear and convincing. It is overwhelming.

### B. *Inadequate Preparation in Violation of DR 6–101(A)(2)*

The Hearing Committee concluded that Respondent had violated DR 6–101(A)(2) (inadequate preparation) because the complaints in three of the civil lawsuits "were found to have been extremely poorly pleaded and legally deficient, even glaringly so

in many respects", and because no competent lawyer "could have filed such pleadings ... without a lack of preparation...." While the Hearing Committee's conclusion is justified, the Board rests its determination of a violation of DR 6–101(A)(2) on a more focused evaluation of Respondent's conduct.

In the Board's view, Respondent's inadequate preparation is established by clear and convincing evidence consisting of (1) the complaint filed in the *MSPB* case plus Respondent's explicit admission that in the *MSPB* case he "attempted to file ... a Bivens-type action",[9] (2) the testimony of Respondent's Office Manager that the complaint in the *EEOC* case was filed exactly as drafted by Respondent's client,[10] and (3) Respondent's testimony that he knew without any research that his client's claims in both the *MSPB* and *EEOC* complaints were "improper".[11]

A Bivens-type action is one based on the Supreme Court's opinion in *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). There, the Court held that the complaint stated a federal cause of action for damages based on allegations that federal narcotics agents had entered and ransacked Bivens' apartment, manacled him in front of his wife and children, and threatened to arrest the entire family, all without a warrant and in plain violation of the Fourth Amendment. The Court, however, expressly noted that it was not deciding whether these federal officials had immunity from civil suit.

Seven years later, in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Supreme Court addressed the immunity issue that had been left open in

---

**8.** The Board rejects Respondent's argument that his client, having drafted the complaint, was responsible for these legal deficiencies. The short answer is that the identity of the author of the complaint is irrelevant to Respondent's failure to effectuate service of process, because a complaint wholly deficient in legal substance can nonetheless be properly served.

**9.** This admission was made in a colloquy between Respondent and Judge Johnson in the MSPB case. *See* Transcript of Argument January 23, 1981, pp. 40–41, reproduced in BX 39.

**10.** *See* Transcript of Testimony at Hearing on August 22, 1984, pp. 265–66.

**11.** *See* Transcript of Testimony at Hearing on August 29, 1984, p. 59.

*Bivens* and expressly held (1) that administrative law judges and others exercising agency adjudicatory functions "are entitled to absolute immunity from damages liability for their judicial acts" and that "[t]hose who complain of error in such proceedings must seek agency or judicial review" pursuant to authorized procedures for appeal, *id.* at 514, 98 S.Ct. at 2915; (2) that government "officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity for damages liability for their parts in that decision", *id.* at 516, 98 S.Ct. at 2916; and (3) that "an agency attorney who arranges for the presentation of evidence on the record in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence." *Id.* at 517, 98 S.Ct. at 2916.

The complaint filed by Respondent in *Oliver v. Merit System Protection Board* named as defendants the Board and all of its then current members, plus the former chairman of the U.S. Civil Service Commission; this complaint alleged in conclusory fashion that the defendants' final decision upholding Mr. Oliver's discharge was "without due process in violation of the Fifth Amendment" and "unlawfully deprives plaintiff of liberty and the pursuit of happiness" without due process, and denied plaintiff the "right to a full due process adversarial hearing". As Judge Johnson observed in her opinion in the *MSPB* case, Respondent could have pursued his client's cause by seeking judicial review of the Board's decision, pursuant to authorized procedures for appeal, but Respondent did not do so. Instead, Respondent filed the *MSPB* lawsuit seeking *inter alia* $6 million in alleged damages, and it was summarily dismissed because the defendants had immunity from a Bivens-type complaint which Respondent was allegedly pursuing.

Once again, Respondent argues that he cannot be guilty of inadequate preparation because the complaint in *MSPB* was pre-

pared by his client, Mr. Oliver. Assuming *arguendo* that Mr. Oliver prepared the complaint and even insisted that it be filed exactly as Mr. Oliver typed it, Respondent cannot so easily escape his responsibility for observing the Disciplinary Rules. Respondent filed the *MSPB* complaint and then in argument before Judge Johnson expressly undertook to defend its substance as a "Bivens-type" complaint. A lawyer competent in a Bivens-type claim either knew, or with minimum preparation should have known, that all of the defendants in the *MSPB* case were performing judicial-type functions and had absolute immunity from any Bivens-type claims. Indeed, in his testimony at the disciplinary hearing, Respondent expressly acknowledged that he "didn't have to do any research to know that what Mr. Oliver wanted with EEOC and suing Merit System Protection Board was improper." [12]

Respondent's argument appears to be that he was aware of these legal deficiencies but was pursuing them at the insistence of his client in order to establish "new law". The Hearing Committee rejected this argument on the ground that there was no evidence, *e.g.*, no time records, legal memoranda, or even testimony, that would cast any doubt on the "conclusion that Respondent gave little or no attention to the framing of Oliver's claims." Hearing Comm. Report at p. 18. The Board concurs in this assessment of Respondent's "new law" argument.

The Board is of the further view that if Respondent had intended to pursue "new law", he violated his obligation to inform the court expressly of the asserted "new law" basis for the civil lawsuits. Under Rule 11 of the Federal Rules of Civil Procedure, as it existed when Respondent filed the four civil lawsuits here in question, the "signature of an attorney constitutes a certificate by him that he has read the pleading [and] that to the best of his knowledge, information and belief there is good ground to support it." Here, it is acknowledged

---

**12.** *See* Transcript of Testimony at Hearing on   August 29, 1984 at p. 59.

that Respondent filed one or more of the complaints as drafted by Mr. Oliver, a non-lawyer, and Respondent may not have even read the *MSPB* or *EEOC* complaints before filing them. As the Hearing Committee found, "Respondent did virtually nothing to assure the preparation of legally sufficient complaints...." Hearing Comm. Report at p. 19.

Respondent's conduct is comparable to the violation of Rule 11 in *Textor v. Bd. of Regents of North. Ill. University*, 87 F.R.D. 751 (N.D.Ill.1980). There, the court imposed sanctions on the plaintiff's attorney for filing a complaint against non-resident defendants under circumstances where "rudimentary principles" made it clear that "critical elements" of the court's jurisdiction are "totally lacking in this case." *Id.*, at 753. At the very least, Respondent had an obligation to inform Judge Johnson of his "new law" concepts and to do so at the very outset of the litigation, rather than in the midst of oral argument on defendant's motion to dismiss. *Compare, Allen v. Faragasso*, 585 F.Supp. 1114, 1119 (N.D.Ca.1984) (attorney reprimanded for violating amended Rule 11 because the alleged claims were "wholly without warrant in law or in any good faith argument for extension or modification of existing law.")

Based on the combination of all of this evidence, the Board sustains the Hearing Committee's finding of inadequate preparation in violation of DR 6–101(A)(2).[13]

## IV. *RECOMMENDED SANCTION*

The Board concurs with the Hearing Committee's recommendation that an appropriate sanction in this case is suspension for a year and a day. However, the Board recommends that any suspension imposed by the court in this proceeding should run concurrently with the suspension, if any, that the court imposes on this same Respondent in the pending case of *In the Matter of Alexander*, D.C.C.A. Docket No. M–84–1160.

This Respondent has heretofore received three Informal Admonitions based on neglect as well as a 90–day suspension for neglect and conduct prejudicial to the administration of justice. Accordingly, Respondent's misconduct in this proceeding must be judged in light of his multiple prior violations of the Disciplinary Rules. *See* Board Rule 10.10.

In the disciplinary case against Respondent now pending before the Court of Appeals, *supra*, the Board has recommended two years' suspension for Respondent's misconduct involving 12 violations of the Disciplinary Rules, wherein the Board found "neglect as the prevailing theme of most of the violations." Accordingly, the misconduct in this proceeding is part of a pattern of neglect by Respondent that extends over a period of approximately three years and reconfirms that Respondent appears to have "little or no respect for his professional obligations". *See* Hearing Comm. Report at 29.

The Board agrees with the Hearing Committee that Respondent's suspension for a year and a day in this case would be consistent with the court's ruling in *In re Roundtree*, 467 A.2d 143 (D.C.1983). In the *Roundtree* case, the attorney had committed four separate instances of neglect and had previously received two informal admonitions and one reprimand. Here the Respondent has received three informal admonitions and one suspension for 90 days.

However, as the Hearing Committee observed, disciplinary cases in which the sanction was greater than suspension for a year

---

**13.** Although the Board concurs with the Hearing Committee's finding of a violation of DR 6–101(A)(2), the Board's recommended sanction as set forth in the next section of this Report would be the same even if Respondent were not guilty of inadequate preparation. In arriving at a recommended sanction herein, the Board has focused on Respondent's overall conduct, rather than on the numerosity of violations of various Disciplinary Rules. In this case, the main thrust of Respondent's misconduct is neglect, and such neglect would not be reduced even if Respondent were not guilty of inadequate preparation.

and a day have typically involved intentional misconduct or a more aggravated type of misconduct than is present here. For example, the court has imposed suspension of two years for misconduct consisting of both neglect and misrepresentations to the client and Bar Counsel, along with a record of prior discipline. *See In re Sheehy,* 454 A.2d 1360 (D.C.1983).

The Board has concluded, however, that the recommended suspension of one year and a day in this proceeding should run concurrently with the suspension, if any, imposed by the court in the pending disciplinary proceeding against Respondent. The misconduct in this proceeding occurred within the same general time frame as the misconduct in the proceeding now before the court.[14]

Under these circumstances, if Respondent's misconduct in this case had been before the Board at the same time as the misconduct in the proceeding now pending before the court, the Board would not have altered its recommended two-year suspension in that pending case. Stated differently, the Board has concluded that a two-year suspension should suffice, both for Respondent's misconduct in the proceedings now before the court *and* for the misconduct in this proceeding as well. However, if for any reason the Court of Appeals rejects the Board's recommendation of two-years' suspension in the pending proceeding, the Board recommends that Respondent's misconduct in this proceeding, standing alone, warrants suspension for a year and day.

FOR THE BOARD ON PROFESSIONAL RESPONSIBILITY

By: /s/ J. Randolph Wilson

All members of the Board concur in this Report except Ms. Cunningham and Mr. Freund, who did not participate.

Dated: [Illegible]

14. Respondent's misconduct in this case began approximately in September 1979 when the Bell complaint was filed and extended until March 1982 when Respondent withdrew from his representation of Mr. Oliver. In the other case against Respondent now before the court, the time frame ranged from December 1978 through June 1981.