**In the Matter of Bruce W. HAUPT.**

**No. M–36–80.**

District of Columbia Court of Appeals.

Submitted July 9, 1980.
Decided Oct. 17, 1980.

No appearance was entered on behalf of respondent Haupt.

Fred Grabowsky, Washington, D.C., Bar Counsel, filed the Report and Recommendations of the Board [on Professional Responsibility.]

Before MACK, FERREN and PRYOR, Associate Judges.

PER CURIAM:

This disciplinary matter is before the court on a petition of the Board on Professional Responsibility (hereinafter referred to as the Board) recommending that respondent be suspended for a period of three years. We accept the findings of fact made by the Board and adopt the recommended disposition.

## I.

### HEARING COMMITTEE

Two separate petitions instituting formal disciplinary proceedings into four unrelated matters were filed on August 13, 1979 and October 5, 1979. The Hearing Committee conducted a hearing on the four counts on November 28, 1979. The Hearing Committee filed the following findings with the Board on March 12, 1980.

### COUNT I (Haupt/Flythe)

Late in 1978, Mrs. Dorothy M. Flythe contacted respondent's office to inquire about obtaining representation in a divorce proceeding. Mrs. Flythe had been separated since 1973 and did not know the whereabouts of her husband. Mrs. Flythe retained respondent, signed the complaint, and paid toward the fee through respondent's secretary, Ms. Marie Collins. In February, Ms. Collins requested $100 for service by publication, and Mrs. Flythe paid it.

Respondent, in the early months of 1979, made no attempts to ascertain the whereabouts of the defendant, but rather had a service Marshal attempt to serve defendant at his last known address where he had not lived for years.

In May, after repeated attempts to contact respondent, Mrs. Flythe contacted the consumer assistance office of a local television station who forwarded her complaint to Bar Counsel. Soon thereafter, in July, respondent contacted and met with Mrs. Flythe for the first and only time, assuring her that she could have her divorce by Christmas. He also asked for and received more money for service by publication. About this time the Superior Court routinely dismissed the divorce complaint. Respondent filed a motion to reinstate the complaint. The Hearing Committee found that respondent either filed a form motion or was unfamiliar with the facts of the case when he filed the motion. The motion was denied without prejudice.

In the interim respondent replied to the letter of inquiry from Bar Counsel stating that the motion had been reinstated and that nothing was being done because Mrs. Flythe had not paid for publication. Nothing further was ever done by respondent.

The Hearing Committee concluded that respondent's conduct was in violation of three disciplinary rules. First, respondent's conduct constituted neglect of a legal matter entrusted to him, DR 6–101(A)(3). Respondent's total effort was to file the complaint and cause a summons to be issued. The motion for reinstatement was likely an attempt to mollify Bar Counsel. Respondent did not ever attempt service by publication nor ever respond to Mrs. Flythe's telephone calls. Mrs. Flythe paid respondent a total of $300.

The Hearing Committee also found a violation of DR 1–102(A)(4), conduct involving deceit and misrepresentation. Ms. Collins had requested and received money for publication in February. Respondent asked for and received money for publication in July. The Hearing Committee concluded that respondent never intended to use the money for publication purposes. Respondent was deceitful in telling Mrs. Flythe that she

would have her divorce by Christmas. Finally, in his letter to Bar Counsel, respondent stated that he had not received money for publication and that the divorce complaint had been reinstated; both were untrue.

Finally, the committee found a violation of DR 7-101(A)(1), intentional failure to seek the lawful objectives of a client through reasonably available means. The committee found that respondent was more than merely neglectful; he was fully aware of his obligation to seek a divorce for Mrs. Flythe and of his failure to do so.

### COUNT II (Haupt/Johnson)

Ms. Joyce Johnson retained respondent to represent her in a divorce action. She terminated the representation and demanded a refund *in toto*. Respondent refused to return the retainer and Ms. Johnson filed suit in Small Claims Court. She attempted to serve respondent by certified mail to his office which was not accepted. A U. S. Marshal attempted to serve respondent in his office nine times within a ten day period, and three times at his Maryland address. All were unsuccessful. The Hearing Committee recommended dismissing the charges, based on allegedly avoiding service, holding that Bar Counsel failed to introduce sufficient evidence of a violation.

### COUNT III (Haupt/Davis)

Respondent agreed to represent Ms. Bernice Davis, who had been charged with a felony in Virginia, for a fee of $350–$400. At the initial visit, Ms. Davis and her daughter asked respondent's secretary whether she needed a Virginia lawyer. Respondent's secretary replied that there would be no problem. They did not discuss with respondent whether a Virginia lawyer would be necessary. Ms. Davis was shocked upon hearing in the courtroom in Virginia that another lawyer would be necessary.

The Virginia lawyer, who had a loose reciprocal work arrangement with respondent, handled the case to Ms. Davis' satisfaction. She charged Ms. Davis an additional fee.

The Hearing Committee concluded that respondent had not violated any of the disciplinary rules that Bar Counsel had charged in the petition.[1] There was no neglect in that he had made arrangements to obtain local counsel and had thereafter consulted by telephone with local counsel on the progress of the case. Although he was remiss in his effort to keep Ms. Davis apprised of the manner in which her case would be handled, respondent did provide her with competent legal assistance.

The committee found that respondent's conduct "came very close to the edge" of involving deceit and misrepresentation, but in the totality, did not meet a finding of affirmative deceit or misrepresentation.

### COUNT IV (Haupt/Bar Counsel)

Count IV involves a reciprocal discipline matter. Respondent was suspended for 90 days in Maryland in 1975 for conduct in violation of DR 1-102(A)(4), conduct involving deceit and misrepresentation. Respondent was retained to represent a juvenile in the Montgomery County courthouse. The juvenile's fiancee accompanied respondent to the cellblock where only attorneys and their assistants were allowed. Respondent told the deputy sheriff that the young woman was his assistant, and she was allowed to enter. Soon thereafter, she was asked to leave after being observed embracing the juvenile. Respondent testified that he knew that she would have been denied permission to enter if he had disclosed the relationship. The Maryland court imposed a 90 day suspension in view of the fact that this was his second disciplinary offense.

---

1. At the conclusion of the testimony, Bar Counsel moved to insert a new charge, violation of DR 2-107(A), making a division of a fee with another lawyer without obtaining the proper consent of the client to the employment of the *other* lawyer. (Hearing committee transcript, p. 215–217). There was some discussion of whether it was proper under *In re Smith*, D.C.

App., 403 A.2d 296 (1979), to amend the petition after the testimony at the hearing, but no brief was filed on the question. The Hearing Committee denied the motion but noted that perhaps an allegation under the fee provision would have been appropriate here. (Hearing Committee Report, p. 19.)

Rather than handling this matter as a reciprocal discipline action, the Board ordered that the matter proceed *de novo*. The Hearing Committee found that respondent had violated DR 1–102(A)(4), but held that in view of the minor nature of the infraction and the passage of five years, it would not be considered in its recommendation of discipline.

## II.

### THE BOARD

The Hearing Committee recommended to the Board that respondent make restitution to Mrs. Flythe in the amount of $300, and be suspended for 18 months to two years. It took into consideration especially the seriousness of the neglect and deceit in the Flythe case, and respondent's prior disciplinary record.[2]

Respondent presented no brief in response to the Hearing Committee Report, nor was oral argument heard. The Report and Recommendations of the Board, issued June 17, 1980 adopted the committee's findings of fact and conclusions of law. However, the Board recommended a more severe sanction of a three year suspension. It concluded that violation of Count IV, the Maryland reciprocal discipline matter, although minor, should also be considered in imposing discipline because it is a part of a pattern of deception. The Board stated:

Deceit, misrepresentation, neglect, and intentional failure to seek a client's objectives are each sufficient breaches of ethical conduct and warrant serious discipline. When the violations are considered as a whole, they disclose a pattern of misconduct that requires exemplary sanctions to protect the public and the legal profession. The picture has emerged of an attorney who in a relatively short career has demonstrated a callous disregard for his clients and an almost total lack of understanding of the ethical code that must govern his daily professional life. A suspension from the prac-

tice of law for three years is such an exemplary sanction. (Report and Recommendations, p. 7).

The Board also recommended that "the Respondent provide full restitution to Mrs. Flythe."

## III.

### CONCLUSION

■ D.C.App.R. XI, Sec. 7(3), which sets forth the role of this court in dispensing disciplinary sanctions, provides in pertinent part that the court "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted." We note in *In re Smith*, D.C.App., 403 A.2d 296, 303 (1979), that the rule endorses the Board's exercise of broad discretion in handing out discipline that is subject only to a general review for abuse in that discretion's exercise. The rule requires that we enforce a general sense of equality in the sanctions handed out, but it otherwise commands that we should respect the Board's sense of equity in these matters unless that exercise of judgment proves to be unreasonable.

■ Many factors must be considered in imposing a specific discipline, *i. e.*, the nature of the violation, the mitigating and aggravating circumstances, the need to protect the public, the courts, and the legal profession. Within the limits of the mandate to achieve consistency, each case must be decided on its particular facts.

■ Despite the difficulty of making exact comparisons, *In re Willcher*, D.C.App., 404 A.2d 185 (1979), and *In re Smith, supra* are two recent examples of decisions that are consistent with the sanction in this case. In *Willcher*, there were eleven separate counts of misconduct centering around neglect, charging excessive fees, and not

2. Respondent has been suspended on two occasions in Maryland, once for 90 days and once for 30 days. He has been suspended once in the District of Columbia for a period of 30 days, and Bar Counsel has issued an informal letter of admonition once.

carrying out the contract of employment. Willcher was suspended for five years.

Smith's misconduct revolved around two counts of misconduct involving neglect of a client's case and deliberately misleading a client. Smith was ordered to make restitution and to be suspended for 18 months.

For the forgoing reasons, the respondent is suspended from the practice of law for three years and, in addition, is ordered to make restitution of $300 to Mrs. Flythe.

*See* D.C.App.R. XI, Sec. 3. The clerk shall enter an appropriate order affecting the imposition of this discipline.

*So ordered.*