**In re Dovey J. ROUNDTREE,
Respondent.**

**No. M–110–82.**

District of Columbia Court of Appeals.

Argued Sept. 14, 1982.

Decided Sept. 19, 1983.

David Carr, Asst. Bar Counsel, Washington, D.C., with whom Fred Grabowsky, Bar Counsel, Washington, D.C., was on the brief, for the Board on Professional Responsibility.

James T. Wright, Washington, D.C., for respondent.

Before NEBEKER, FERREN and TERRY, Associate Judges.

PER CURIAM:

The court has before it the Report and Recommendation of the Board on Professional Responsibility (the Board), which considered five separate allegations of professional misconduct by respondent, a member of the bar.[1] After examining the findings

---

1. One of the charges was found by the hearing committee to be unsupported by the evidence, and the Board "reluctantly" sustained that finding.

and conclusions of its hearing committee, the Board found that respondent had committed one violation of Disciplinary Rule 1–102(A)(4),[2] four violations of DR 6–101(A)(3),[3] and two violations each of DR 7–101(A)(1), (2), and (3).[4] Although Bar Counsel argued for a suspension of a year and a day, the Board recommended that respondent be suspended for six months. Having conducted our own review of the record, we agree with Bar Counsel that a suspension of a year and a day is appropriate.

Respondent challenges the Board's decision on several grounds. First, she argues that the Board's findings and conclusions are not supported by the record. Second, she maintains that the composition of the hearing committee which heard her case violated due process because it lacked members who practiced in her special field of law. Third, respondent claims that the Board's proposed suspension for six months is too great when compared with sanctions in other cases for comparable conduct. Fourth, respondent contends that the Board's recommendation that she make restitution to one client in the amount of $410 was unreasonable and inequitable. We find no merit in any of respondent's arguments.

I

■ Rule XI, § 7(3), of our Rules Governing the Bar provides that this court "shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record . . . ." In this case the hearing committee heard testimony from respondent and the four clients whose complaints formed the basis for the

charges against her. The transcript of the hearing, which lasted two days, is almost 500 pages long. Both respondent and Bar Counsel conducted direct and cross-examination and submitted proposed findings of fact and recommendations for discipline. The hearing committee made extensive findings of fact, which were reviewed by the Board before it issued its own Report and Recommendation. The record amply demonstrates that the Board's findings were supported by substantial evidence.

*Count One*

In February of 1978, Mrs. Cleo Poole retained respondent to obtain a legal separation and support order, explaining to respondent that she was in serious financial need. At that time Mrs. Poole was confined to a hospital, and her husband, with whom she no longer lived, had stopped sending her money. Respondent promptly filed a complaint and a motion for temporary support. Mrs. Poole's husband then sent her some money, but it was not enough to meet her needs. After about two months, Mrs. Poole notified respondent that because of her financial plight, she was going to have to abandon her suit and move back to Virginia to live with her parents.[5] Respondent, however, persuaded her to remain in the District of Columbia and finally reached an agreement with counsel requiring Mrs. Poole's husband to pay interim support through the court.

Having learned that her husband had made payments into the registry of the court, Mrs. Poole attempted several times to withdraw those funds, but the court refused to release them. Mrs. Poole left re-

---

2. DR 1–102(A)(4) prohibits a lawyer from engaging in conduct "involving dishonesty, fraud, deceit, or misrepresentation."

3. DR 6–101(A)(3) provides that a lawyer shall not "[n]eglect a legal matter entrusted to him."

4. DR 7–101(A)(1) states that a lawyer shall not intentionally "[f]ail to seek the lawful objectives of his client . . . ."

   DR 7–101(A)(2) provides that a lawyer shall not intentionally "[f]ail to carry out a contract

of employment entered into with a client for professional services . . . ."

   DR 7–101(A)(3) prohibits intentional conduct on the part of an attorney which might "[p]rejudice or damage his client during the course of the professional relationship . . . ."

5. At the hearing Mrs. Poole testified that she was behind in her rent, that she lacked money for food, and that her car had been repossessed, her electricity shut off, and her phone disconnected.

peated messages at respondent's office concerning the difficulty she was having, but respondent never returned her calls, nor did she do anything to effect the release of the money. Finally, after several months, Mrs. Poole collected her money from the court registry. The difficulties she had experienced were due to respondent's failure to have a consent order properly entered. The Board found that respondent had neglected a legal matter entrusted to her, in violation of DR 6–101(A)(3).

### Count Two

In the spring of 1977, Mrs. Brenda Jones engaged respondent's services in a domestic matter. Mrs. Jones and her husband had been separated for five years, during which she had supported herself and her two minor children. Mrs. Jones told respondent that she was primarily interested in obtaining a divorce, but at respondent's suggestion she agreed to seek child support and custody as well. Although the complaint drawn up by respondent sought both an absolute divorce and child support and custody, respondent only charged Mrs. Jones the fee for an uncontested divorce. The complaint was filed, and some time later respondent and the husband's court-appointed attorney[6] filed a joint praecipe placing the case on the court's uncontested calendar.

When Mrs. Jones received a notice from respondent that a hearing had been set for November 17, she made an appointment to meet with respondent at her office on November 14. Upon arriving there, however, she was told that respondent could not see her and that respondent's associate, Jerry Hunter, would be handling her case. Mr. Hunter had not reviewed Mrs. Jones' file, nor had he discussed the case with respondent. When he read the complaint for the first time during the meeting with Mrs.

Jones, he saw that it requested child support. He thereupon told Mrs. Jones that her case could not be heard as an uncontested matter and arranged to have it taken off the court's hearing calendar for November 17. Nothing more was done. Over the next nine months Mrs. Jones called respondent's office several times inquiring about the status of her case, but she was never given any information. Because respondent failed to pursue Mrs. Jones' claim, the case was dismissed by the court. The Board found that respondent had violated DR 6–101(A)(3) and 7–101(A)(1), (2), and (3).

### Count Three

On December 21, 1977, Dorothy Jackson came to respondent's office to discuss a complaint for divorce she had received which had been filed by her husband in Ohio. Respondent selected an Ohio attorney for Mrs. Jackson from a legal directory and dictated a letter to that attorney in Mrs. Jackson's presence. The letter asked the attorney to accept the case and to provide information about her fee.[7]

On February 22, 1978, respondent telephoned the Ohio attorney and requested that she attend a hearing scheduled for the following day in Ohio. Although the attorney had little or no knowledge of the facts of the case, she agreed to go to court and request a continuance. That request was denied, an absolute divorce was granted, and all of the marital property, including valuables belonging to Mrs. Jackson, was awarded to Mrs. Jackson's husband. A letter recounting these events was promptly sent by the Ohio attorney to respondent, who forwarded a copy to Mrs. Jackson.

On March 7 Mrs. Jackson met with respondent at her office. Respondent suggested that Mrs. Jackson appeal the Ohio

---

**6.** Counsel had been appointed to represent Mrs. Jones' husband because no answer to the complaint had been filed. Counsel was unable to locate the husband and eventually filed an affidavit to that effect in lieu of an answer.

**7.** There is some question whether the letter was ever sent. The Ohio attorney had no copy of it in her files, and certain notations on respondent's copy seem to indicate that the letter she dictated was only a draft.

decision, and Mrs. Jackson agreed. No action was taken by respondent to note an appeal, however, until March 22, and by that time the twenty-day appeal period had expired. The Board found that respondent had violated DR 6–101(A)(3) and 7–101(A)(1), (2), and (3).[8]

### Count Four

The final disciplinary matter involved Diane White, who consulted respondent in October 1979 regarding certain alleged discrimination and harassment which she was experiencing at work. Respondent discouraged the filing of a civil suit, but she said she would review the employment files maintained by Mrs. White's union to determine whether administrative action was appropriate. Mrs. White told her union representative that her attorney would be calling and asked the union to provide respondent with pertinent information. Some time passed, but Mrs. White heard nothing further, so she contacted respondent again. Respondent then informed her that she had sent a letter to the union president. When nothing more happened, Mrs. White telephoned respondent and requested a copy of the letter. She never received it. The evidence showed that respondent took no action in Mrs. White's behalf, even though she accepted a fee. The Board found that re-

spondent had violated DR 1–102(A)(4) and 6–101(A)(3).[9]

There is no question that respondent's conduct in these four cases fell well below the minimum standard of performance which every attorney owes to a client. Nor do we doubt that the Board's findings were supported by substantial evidence. Our independent review of the record convinces us that there was abundant evidence from which the Board could conclude that respondent violated each of the cited disciplinary rules. Accordingly, we accept the findings of the Board.

### II

Respondent argues that she was denied due process of law because the hearing committee which considered the charges against her was not comprised of practitioners in respondent's field of specialty, which she describes as "community law."

■ It is well settled that no right exists to be heard by a particular tribunal. *E.g., Crane v. Hahlo,* 258 U.S. 142, 42 S.Ct. 214, 66 L.Ed. 514 (1922); *Sill v. Pennsylvania State University,* 462 F.2d 463 (3d Cir.1972). Due process guarantees only that an individual shall receive notice and an opportunity to be heard by a tribunal that is fair, impartial, and legally constituted. *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d

---

8. Respondent's argument that an attorney-client relationship was never formed between herself and Mrs. Jackson is unpersuasive. Respondent took several affirmative steps in her capacity as an attorney to ensure that her client was represented in the Ohio proceeding (even though her efforts were insufficient to protect her client's rights). Mrs. Jackson testified that she looked to respondent and not to the lawyer in Ohio as her attorney. Furthermore, respondent had represented Mrs. Jackson prior to the divorce action, and she continued to represent her in another legal matter after the Ohio proceeding. Thus the Board did not err in finding that an attorney-client relationship existed between respondent and Mrs. Jackson.

9. Respondent argues unconvincingly that she never undertook to represent Mrs. White and that she was only counseling her in what respondent calls a "quasi-legal" capacity. Both

the hearing committee and the Board concluded that an attorney-client relationship existed. Whether an attorney-client relationship exists is a factual issue to be determined by the trier of fact. *Quaglino v. Quaglino,* 88 Cal.App.3d 542, 152 Cal.Rptr. 47 (1979); *Kurtenbach v. TeKippe,* 260 N.W.2d 53 (Iowa 1977); *Crest Investment Trust, Inc. v. Comstock,* 23 Md. App. 280, 327 A.2d 891 (1974); *In re Palmieri,* 76 N.J. 51, 385 A.2d 856 (1978); *Chavez v. State,* 604 P.2d 1341 (Wyo.), *cert. denied,* 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1979). Considering that the parties first met in respondent's office, that a fee was collected for that meeting, that the parties discussed Mrs. White's employment situation by telephone on several occasions, and that respondent offered to review Mrs. White's union files, we cannot say that the Board erred in concluding that the parties had established an attorney-client relationship.

725 (1975); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313–315, 70 S.Ct. 652, 656–58, 94 L.Ed. 865 (1950). Respondent has made no allegation of bias on the part of any members of the hearing committee, nor has she suggested that the proceedings against her were in any way irregular. Her only claim is that her case should have been heard by attorneys engaged in the same type of law practice as her own. We reject respondent's argument.

■ The Constitution guarantees to no one the right to hand-pick the tribunal that will hear his or her case. This court's Rules Governing the Bar provide only that "[e]ach hearing committee shall consist of three members, at least two of whom must be members of the Bar of the District of Columbia." Rule XI, § 5(1). The fact that lay persons are permitted to serve on hearing committees reflects an intent by this court to have broad rather than narrow membership on the committees.[10] Furthermore, the District of Columbia has only one Code of Professional Responsibility which applies equally to all lawyers, regardless of their specialties. Respondent's conduct was evaluated by the hearing committee according to that code.

The record makes clear that the charges against respondent were filed, handled, and disposed of in a fair and orderly manner, pursuant to the established rules of this court, by an impartial and lawfully constituted tribunal. Due process requires no more.

### III

Respondent also contends that even if the findings of misconduct are sustained, the discipline proposed by the Board for that misconduct is too severe. We conclude, to the contrary, that the six-month suspension recommended by the Board is not severe enough because it is inconsistent with the sanctions previously imposed in comparable cases.

■ Our review of the Board's recommendation is controlled by Rule XI, § 7(3), of our Rules Governing the Bar, which provides that this court "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted." Furthermore, "[t]he rule requires that we should respect the Board's sense of equity in these matters unless that exercise of judgment proves to be unreasonable." *In re Haupt,* 422 A.2d 768, 771 (D.C.1980). Nevertheless, "[w]ithin the limits of the mandate to achieve consistency, each case must be decided on its particular facts." *Id.* Considering the gravity and frequency of respondent's misconduct, together with her prior record of disciplinary infractions,[11] we hold that the Board's recommendation of a six-month suspension was inadequate under the circumstances. Instead, we impose a suspension of a year and a day, as suggested by Bar Counsel.

This court has previously imposed six-month suspensions on attorneys for misconduct much less serious than that of respondent. *See In re Lieber,* 442 A.2d 153 (D.C. 1982) (six-month suspension for neglect of a legal matter and engaging in conduct prejudicial to the administration of justice); *In re Whitlock,* 441 A.2d 989 (D.C.1982) (six-month suspension for neglect of two legal

---

**10.** The hearing committee that heard respondent's case, like all of the Board's hearing committees, was comprised of two lawyers and one non-lawyer.

**11.** The four cases presented here for review are not the only instances of respondent's misconduct. In November of 1974, the Board issued an informal admonition to respondent for her neglect of a legal matter (Bar Docket No. 64–74 B). Again in September of 1977, the Board informally admonished respondent for neglect of a legal matter and conduct prejudicial to the administration of justice (Bar Docket No. 93–76). Most recently, in September of 1978, the Board reprimanded respondent for neglect of a legal matter, failure to seek the lawful objectives of her client, failure to carry out a contract of employment, and prejudicing a client during the professional relationship (Bar Docket No. 31–76).

matters, failure to seek the lawful objectives of two clients and to carry out contracts of employment for professional services, and failure to comply with court orders and to cooperate with Bar Counsel); *In re Ramos,* No. M–74–81 (D.C. June 23, 1981) (six-month suspension for two counts of neglect and for attempt by attorney to exonerate himself from wrongdoing); *In re Russell,* 424 A.2d 1087 (D.C.1980) (six-month suspension for neglect of a legal matter, plus failure to cooperate with Bar Counsel).

Substantially longer suspensions have been imposed for more serious misconduct. *See In re Thorup,* 461 A.2d 1018 (D.C.1983) (two-year suspension for neglect of a legal matter, engaging in conduct prejudicial to the administration of justice, and failure to seek the lawful objectives of a client); *In re Haupt,* 422 A.2d 768 (D.C.1980) (three-year suspension for neglect of a legal matter, deceit, misrepresentations to client, and intentional failure to seek client's objectives); *In re (Martin) Fogel,* 422 A.2d 966 (D.C. 1980) (suspension for a year and a day for neglect of a legal matter, deceit, and misrepresentation in a case involving only one client); *In re Willcher,* 404 A.2d 185 (D.C. 1979) (five-year suspension for eleven counts of misconduct including neglect, failure to seek the lawful objectives of clients, failure to cooperate with Bar Counsel, and charging excessive fees); *In re Smith,* 403 A.2d 296 (D.C.1979) (eighteen-month suspension for neglecting two legal matters and misrepresentations to client). While comparisons of disciplinary cases can never be exact, and while each case must be evaluated on its own facts, *In re Russell, supra,* we find respondent's case to be much closer to those imposing suspensions of a year and a day or longer than to such cases as *Lieber* and *Whitlock.*

■ In arriving at an appropriate sanction, we must, of course, consider many factors, including "the nature of the viola-

tion, the mitigating and aggravating circumstances, and the need to protect the public, the courts, and the legal profession." *In re Haupt, supra,* 422 A.2d at 771. Respondent has neglected seven different legal matters entrusted to her, a most alarming statistic in itself.[12] This pattern of neglect is exacerbated by several other violations of the Code of Professional Responsibility, as well as by respondent's failure to perceive any wrongdoing on her part or to correct the practices which led to her prior encounters with the disciplinary system. Taking into account respondent's past history of infractions and the seriousness of the four matters before us in this case, we conclude that a suspension of a year and a day is warranted.

## IV

■ Finally, respondent claims that the Board's decision to require restitution to Brenda Jones was "unreasonable and inequitable under the circumstances." We disagree. Mrs. Jones paid respondent $410 in connection with the divorce she was seeking.[13] Because of respondent's errors and neglect, however, the case was ultimately dismissed. Thus Mrs. Jones received no benefit from the money she paid to respondent. While respondent did not retain the full sum, her conduct caused Mrs. Jones to be $410 out of pocket. It is therefore equitable for her to make restitution, and not to require Mrs. Jones to bear any part of the loss. *See, e.g., In re Haupt, supra* (lawyer's failure to obtain divorce for client required return of fee); *In re Smith, supra* (failure of counsel to perform services required return of retainer).

We conclude that the findings of the Board concerning respondent's violations of the Code of Professional Responsibility were supported by substantial evidence. We therefore direct respondent to make

12. This figure includes the four instances in the present case and the three prior matters cited in note 11, *supra.*

13. Of the $410 paid to respondent, $300 was for respondent's fee, $100 covered the cost of court-appointed counsel for Mrs. Jones' husband, and $10 was paid to the court as a filing fee.

restitution to Brenda Jones in the amount of $410. In addition, respondent shall be suspended from the practice of law for a period of a year and a day, commencing thirty days from the date of this opinion.

*It is so ordered.*