541 A.2d 1276 (1988)
In the Matter of Melvin WASHINGTON, Respondent.
No. 85-902.
District of Columbia Court of Appeals.
Submitted February 19, 1988.
Decided May 4, 1988.
Before FERREN, BELSON and STEADMAN, Associate Judges.
PER CURIAM:
Before us is a recommendation of the Board on Professional Responsibility that respondent be suspended for three years. We think this sanction insufficient. The record shows a persistent pattern of violation of the most basic requirements of the attorney-client relationship. No responsibility of our attorney disciplinary system is more fundamental than protecting the public against such actions. Although disbarment could well be an appropriate sanction for such numerous derelictions, we impose on the facts of this case a four-year suspension.[1]
As the attached Board Report and Recommendation spells out in detail, respondent was found to have neglected five legal matters entrusted to him, involving a total of some fourteen clients. Indeed, for all practical purposes, he did almost nothing to further the interests of the clients, although in three of the five cases he had received payments from the clients either in fees or as advance litigation expenses.[2] He often failed to communicate with his clients or to respond to inquiries, and in two cases made affirmative misrepresentations. At times, he did not return documents to clients who severed their relationship with him.
*1277 None of the facts found by the Board is contested by respondent, who filed no brief either with the Board or with us. Indeed, respondent's whole attitude toward the disciplinary process seems to be, as the Board Report puts it, "one of disdain." The attempts to avoid service of process, after winning a prior appeal on this precise issue, see In re Washington, 513 A.2d 245 (D.C. 1986), the indifferent conduct at the hearings, and the apparent lack of any contribution or regret are all matters of serious concern, counting against him in the weighing of appropriate sanction. Furthermore, while the Board suggests that respondent's prior disciplinea ninety-day suspension for two instances of neglect and other Code breaches, In re Washington, 489 A.2d 452 (D.C.1985)should not be taken into account as an unlearned lesson, we note that the Hearing Committee proceedings in that case began in late 1983 and the Board's Report to us was issued in October of 1984. Thus, by at least the time of the neglect in the case involving the faculty members of the University of the District of Columbia, he certainly was on notice of the adverse judgment by his peers on his conduct of the practice of law. In any event, the facts underlying the prior discipline tend to confirm the ongoing nature of respondent's misconduct.
On the other hand, we must take into account the fact that the Board has not found that any actual lasting harm resulted as a consequence of respondent's actions.[3] The occurrence of actual harm is by no means a prerequisite for disciplinary action, certainly not where the potential for harm is plainly present as here. But, the absence of actual harm has some marginal relevance which we will take into account in this instance. See In re Reback, 513 A.2d 226, 232 n. 5 (D.C.1986) (en banc); cf. In re Hutchinson, 534 A.2d 919, 925-26 (D.C.1987) (en banc). Furthermore, we cannot be unmindful of respondent's long history of unblemished practice prior to the commencement of these acts of misconduct and of his past pro bono work in the community and sustained contributions to the Bar, see In re Washington, supra, 489 A.2d 461, 463, albeit these must be a wasting asset that cannot repeatedly be taken into consideration. These considerations have persuaded us, but barely, that discipline just short of disbarment is appropriate.[4]
Accordingly, it is ORDERED that Respondent Melvin J. Washington is suspended from the practice of law for four years, effective 30 days from the date of this decision and order. It is
FURTHER ORDERED that Respondent Melvin J. Washington make restitution as set forth in the annexed Board Report and Recommendation.
So Ordered.
STEADMAN, Associate Judge, concurring in part and dissenting in part:
I am in accord with my colleagues' views on the serious nature of the offenses here. However, since I think that this court should be strongly inclined to "respect the Board's sense of equity in these matters [of sanction] unless that exercise of judgment proves to be unreasonable," In re Haupt, 422 A.2d 768, 771 (D.C.1980), and since in my view the Board's proposed sanction falls within an acceptable spectrum, I would adopt its recommendation.

DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

IN THE MATTER OF MELVIN WASHINGTON, RESPONDENT.

Bar Docket Numbers: 219-84

*1278
 306-84
 25-84
 303-86
 226-84
 141-84

REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY
This matter comes before the Board on Professional Responsibility on three reports: 1) that of Hearing Committee Number Two dated July 29, 1987; 2) that of Hearing Committee Number Ten dated August 4, 1987; and 3) that of Hearing Committee Number Nine dated September 24, 1987. These three cases, involving six separate petitions, have been consolidated before the Board. Respondent has not objected to the Hearing Committee reports.[1]

Procedural History
Docket Numbers 219-84 and 306-84 are on remand from the District of Columbia Court of Appeals. In re Washington, 513 A.2d 245 (D.C.1986). In the original proceeding, Bar Counsel had mailed copies of the petitions by certified and regular mail to Respondent. The certified mail copies were not claimed and thus were returned to Bar Counsel.[2] The copies sent by regular mail were not returned to Bar Counsel. The Court of Appeals remanded the proceedings, holding that personal service of the petitions was required by D.C.Code Section 11-2503(b) and that such service had not been properly effected.
On remand, Bar Counsel personally served new petitions in Docket Numbers 219-84 and 306-84 on Respondent on September 27, 1984. In addition, four new cases were instituted by Bar Counsel against Respondent. Accordingly, Bar Counsel personally served Respondent with three new petitions concerning: (1) Docket Number 25-84; (2) Docket Number 303-86; and (3) Docket Numbers 226-84 and 141-84.
On remand, before Hearing Committee Number Two, Bar Counsel moved to have the entire transcript of the 1984 disciplinary proceedings admitted into evidence. Tr. 6 at 91-92.[3] The Hearing Committee ruled that Bar Counsel could not introduce the entire record because of the Court of Appeals' holding in Washington. H.Comm.Rpt. 14. The Board adopts the Hearing Committee's ruling. Respondent had not been provided the opportunity to cross-examine the witnesses at the 1984 hearing pursuant to the Board rule that prohibits an attorney who fails to respond to a petition from presenting an affirmative case. Board Rule 7.3. In light of the Court's remand based on ineffective service of the petition, the Hearing Committee properly limited the introduction of the transcript.
In Docket Numbers 226-84 and 141-84, Respondent moved to quash the service of process of the petition instituting formal disciplinary proceedings alleging that the service was insufficient. Respondent argued that the service was inadequate in form but acknowledged actual receipt of the petition. The Hearing Committee recommended that the Board deny Respondent's motion. Board Rule 7.13. The Board adopts this recommendation.
The basis for Respondent's motion was that the petition had been "thrown" at him *1279 from a passing van and thereafter retrieved by him from the "gutter." Tr. 8 at 10. The testimony of the two process servers, one of whom had attempted service and the other of whom had effected service, not only contradicts Respondent's testimony but evidences Respondent's attempts to avoid service. David Felter testified that he personally attempted service on Respondent on several occasions and that Respondent took repeated steps to avoid service, including refusing to open the door at his home and identifying himself as his brother. Tr. 8 at 15-16. Lawrence Ulrich testified that he drove up beside Respondent, who was standing beside his car, "flipped" the petition towards Respondent's chest and observed Respondent catch it in his arms. Tr. 8 at 21-22. Ulrich also testified that he had previously been assaulted by Respondent. Tr. 8 at 23-24.

Findings of Fact and Conclusions of Law
These matters have not been contested by Respondent before the Board. The Board affirms the Hearing Committees' findings and conclusions because they are based on substantial evidence in the record as a whole.

1) Docket Number 219-84: Mills Complaint

Ms. Jacqueline Mills and her parents, Mr. Samuel I. Mills and Mrs. Mabel G. Mills, retained Respondent to represent Ms. Mills concerning an automobile accident that had occurred in March 1983. Various members of the Mills family testified that they had provided Respondent with copies of medical reports, bills, and other documents that Respondent had requested.
The Abbey Casualty Insurance Company, which represented the taxi cab company involved in the accident, contacted Mr. Mills concerning the possibility of settling the claim. Mr. and Mrs. Mills refused to negotiate directly with the insurance company. They informed Respondent of the contact and requested that he negotiate with the company. Respondent failed to communicate with the insurance company.
Mr. and Mrs. Mills unsuccessfully attempted to communicate with Respondent during 1983. Respondent failed to return telephone messages left by the Mills.
Respondent failed to take any action on behalf of the Mills, and he did not file suit. He testified that he did not file suit because he had been awaiting the outcome of the litigation attacking the District of Columbia's nofault insurance law. Tr. 6 at 35-37. Respondent failed to inform his clients of this decision.
Mr. and Mrs. Mills requested that Respondent return the papers that had been given to him. Respondent testified that the only papers that he had received related to another accident that had occurred in 1981 of which Mr. and Mrs. Mills' daughter had also been involved. Tr. 6 at 20-21.
Ultimately, Mr. and Mrs. Mills settled directly with the insurance company.
Bar Counsel charged Respondent with violations of DR 6-101(A)(3), neglect of a legal matter entrusted to him by the Mills, and DR 9-103(B)(4), failure to deliver their papers to the clients.
The Hearing Committee found that Respondent had violated DR 6-101(A)(3) because he had neglected to do anything with respect to Ms. Mills' personal injury case. The Committee further found that the evidence "lacks sufficient clarity and persuasiveness" to support a violation of DR 9-103(B)(4). H.Comm.Rpt. 37-38. We agree.
Respondent neglected the Mills case in several respects: (1) he failed to file suit on behalf of his client; (2) he failed to communicate with his clients, despite their efforts to contact him; and (3) he failed to communicate with the insurance company concerning settling the claim. In re Roundtree, 467 A.2d 143 (D.C.1983).

2) Docket Number 306-84: Turnbow Complaint

In October 1981, Ms. Alfred Turnbow had consulted a physician. In April 1982, she consulted Respondent concerning a possible medical malpractice claim against her physician. Respondent agreed to investigate *1280 the claim. He thereafter advised Ms. Turnbow to proceed with her case.
On January 21, 1983, Ms. Turnbow gave Respondent a check in the amount of one hundred and seventy dollars ($170.00), which Respondent had requested as an advance against litigation expenses. Ms. Turnbow also provided Respondent with the originals of her medical records and other documents.
Ms. Turnbow was unable to reach Respondent either by telephone or by visiting his office. She did see him by chance on the Howard University campus at which time he told her the case was proceeding. Specifically, he told her that he had filed suit and was waiting for a court date. Tr. 2 at 120-22.
Ms. Turnbow became dissatisfied with Respondent, and in August 1983, she retained new counsel. Ms. Turnbow repeatedly requested that Respondent forward her papers to her. Respondent failed to do so. Tr. 2 at 127, 131-2.
Bar Counsel charged Respondent with violations of DR 6-101(A)(3), neglect a legal matter entrusted to him; DR 1-102(A)(4), misrepresenting to his client that he had filed suit on her behalf when in fact he had not filed suit; and DR 9-103(B)(4), failure to return to his client her papers.
The Hearing Committee found that Respondent had violated DR 6-101(A)(3) in that he was retained to file a suit on behalf of his client but failed to do so and failed to communicate with his client. The Hearing Committee properly rejected Respondent's contention that he did not believe his client had a case. Respondent's obligation was to pursue his client's case or to advise her that her case lacked any merit, in an effort to dissuade her from proceeding. If he was unsuccessful in persuading the client not to file suit, his ethical obligation was then to withdraw from the case. An attorney is not free to substitute his judgment for that of his client on such matters. See In re Stanton, 470 A.2d 281 (D.C.1983).
The Hearing Committee further found that Respondent had violated DR 1-102(A)(4) in misrepresenting to the client the status of her case. See In re Reback, 513 A.2d 226 (D.C.1986) (en banc). We agree.
Finally, the Hearing Committee found that Respondent had violated DR 2-110(A)(3) by failing to return documents to the client rather than DR 9-193(B)(4), which was the section charged by Bar Counsel in his petition. We affirm. As a matter of due process, Respondent had adequate notice as to what conduct Bar Counsel had charged was unethical. Moreover, the facts giving rise to the alleged violation of DR 2-110(A)(3) or 9-103(B)(4) are the same, and thus, Respondent had notice of the substance of the charge against him. Board Rule 7.18; see In re Ramos, 85-1644 (D.C. Sept. 16, 1986); In re Smith, 403 A.2d 296 (D.C.1979).[4]

3) Docket Number 25-84: Jackson Complaint

Ms. Hattie M. Jackson had consulted Respondent in 1982 concerning issues related to the death of Mr. Carey D. Lowrey, a man with whom she had lived. Respondent had advised Ms. Jackson that she might have a claim against the estate as a common law spouse.
On August 20, 1982, Respondent wrote the estate's attorney that he was seeking a statutory share in the case for his client. On September 7, 1982, Respondent was contacted in writing by the estate's attorney, indicating that Ms. Jackson's status had not yet been established and requesting evidentiary support for her claim to be a common law spouse.
Ms. Jackson testified that Respondent told her that he had filed a claim against the estate. There is no evidence that Respondent did file a claim.
On the last day allowed for filing an action to contest to the estate, Respondent contacted the estate's lawyer. In response to the telephone call, the estate's attorney again requested documentation concerning *1281 Ms. Jackson's claim. Respondent failed to respond. On March 21, 1983, and May 12, 1983, the estate's attorney, again, to no avail, tried to solicit a response from Respondent. Ms. Jackson also had tried to contact Respondent. He failed to respond to her.
Respondent did advise Ms. Jackson to not cash a check that she had received from the estate to reimburse her for funeral expenses. Up to the time of the hearing, Ms. Jackson had not been reimbursed.
Ms. Jackson retained new counsel, who requested Respondent to forward her file. Respondent did not do so.
Bar Counsel charged Respondent with violating DR 6-101(A)(3), neglect of Ms. Jackson's claim against the Lowrey estate and in failing to respond to his client; DR 7-101(A)(1), intentional failure to seek the lawful objectives of his client; DR 1-102(A)(4), misrepresenting to his client that he had filed a formal claim against the estate; and DR 9-103(B)(4), failure to return his client's papers to her upon request.
The Hearing Committee found that Respondent had neglected Ms. Jackson's claim against the Lowrey estate in that, after he had notified the personal representative of a possible spousal interest, he did little else to pursue the claim, even in response to the personal representative's repeated promptings.[5] We agree.
Finally, the Hearing Committee found that Respondent had violated DR 2-110(A)(3) in failing to return to his client her file. We agree. See discussion, supra, concerning DR 9-103(B)(4) charge with respect to Turnbow complaint.

4) Docket Number 303-86

Respondent was retained by eight faculty members of the University of the District of Columbia to pursue employment grievances against the University. Respondent agreed to begin work immediately upon receipt of the first installment payment of his legal fees. The first payment was made on October 17, 1984.
The group did not hear from Respondent until December 21, 1984, when he met with them and informed them that he was investigating their grievances.
From December 21, 1984, to September 1985, the clients made numerous unsuccessful attempts to contact Respondent by telephone. In September, the group sent Respondent a certified letter, which was returned unclaimed.
Some of the clients saw Respondent by chance in February 1986, and later in the Spring of 1986, at which time they inquired about the status of their case. Respondent told them that he would contact them immediately, but he failed to do so. Another client wrote Respondent a letter to which he did not respond.
In May 1986, the group sent Respondent a letter concerning the status of the case. Respondent failed to respond.
The Hearing Committee found that Respondent's conduct violated DR 6-101(A)(3) in that he had neglected the legal matter entrusted to him by failing to respond to his clients' inquiries and to keep them informed as to the status of the case. The Hearing Committee also found that Respondent's conduct constituted a violation of DR 7-101(A)(1) by failing to prosecute a claim on behalf of his client. We agree with these findings.
*1282 Respondent was "demonstrably aware" of his neglect so as to have intentionally failed to seek the lawful objectives of his client. Respondent agreed to pursue his clients' cases, and at the December 21, meeting, informed his clients that he was making inquiries on their behalf; however, there is no evidence that he took any action. Such conduct clearly evidences Respondent's knowledge of his responsibilities and his failure to fulfill his obligations to his clients. See In re Dory, 528 A.2d 1247 (D.C.1987); In re Reback, 487 A.2d 235 (D.C.1985), adopted in relevant part, 513 A.2d 226, 229 (D.C.1986) (en banc).
The Hearing Committee also found that Respondent had violated DR 2-106(A) by charging an excessive fee in that he received a $2500 fee for which he performed no services. We agree.

5) Docket Number 226-84: Peamon Complaint

Respondent was retained by Mr. Peamon to represent him in pending civil rights litigation and in further litigation to be filed against the Washington Hilton Hotel and his labor union alleging violations of his civil rights in connection with his dismissal from employment as a banquet waiter.
Respondent never initiated any contact with his client concerning his case and never returned his client's telephone calls. Respondent did meet with his client when the client visited Respondent's office, at which time Respondent indicated that work was being performed and that a new lawsuit had been filed.
In fact, Respondent had not filed a new lawsuit. He did enter his appearance in the pending suit about two months after he was retained and only after the suit had been dismissed in the interval. Respondent also failed to respond to three letters from Bar Counsel inquiring about the Peamon complaint, one of which was personally served, and he failed to respond to Bar Counsel's subpoena for documents.
The Hearing Committee found that Respondent's conduct had violated DR 6-101(A)(3) and DR 7-101(A)(1) in that he had failed to pursue litigation on behalf of his client despite repeated reminders from his client. In addition, Respondent claimed falsely that: (1) he had filed suit; (2) initiated discovery in such suit; and (3) had scheduled a hearing. He even went so far as to supply a false case number to his client. Thus, Respondent's affirmative efforts to hide his neglect raises his neglect to an intentional failure to pursue his client's objectives.
Finally, the Hearing Committee concluded that Respondent had violated DR 1-102(A)(4) in misrepresenting the status of the case to his client and DR 1-102(A)(5) in failing to respond to Bar Counsel's legitimate inquiries. We agree.

6) Docket Number 141-84: Barnes Complaint

Ms. Barnes retained Respondent to represent her in a dispute with her employer, the Sheraton-Washington Hotel. Ms. Barnes was subsequently rehired by the hotel, but it is unclear whether she was rehired due to Respondent's efforts.
Thereafter, Ms. Barnes was again dismissed. She then left papers relating to her second dismissal with Respondent's secretary.
Respondent failed to respond to three letters from Bar Counsel concerning Ms. Barnes' complaint, one of which was made by personal service.
The Hearing Committee concluded that there was not clear and convincing evidence that Respondent had neglected a matter entrusted to him because it was not established that Respondent was retained by Ms. Barnes with respect to the second dismissal. We agree.
The Hearing Committee did, however, find, and we agree, that Respondent violated DR 1-102(A)(5) by failing to respond to Bar Counsel's legitimate written inquiries.

Sanction Recommendation
The six cases consolidated in this matter paint a picture of an attorney who has demonstrated a callous disregard for his obligations to his clients. In five of the six cases neglect was found; two also involve *1283 the intentional failure to fulfill the lawful objectives of his client; one involves Respondent's failure to return to his clients their papers; two involve misrepresentations to his clients in order to conceal his misconduct; and one involves charging an excessive fee. These six matters exhibit a pattern of unethical conduct, evidencing a cavalier attitude toward his obligations to clients. Respondent agrees to represent them in various matters, does nothing, and thereafter disregards his clients' rights to make decisions in their cases and to be kept informed accurately of the status of their cases.
Further, Respondent's attitude toward the disciplinary process is one of disdain. His attempts to avoid service of the disciplinary petition coupled with his repeated failure to make timely filings show clearly the disregard in which Respondent holds the Court's disciplinary system. Further, he has been found to have violated DR 1-102(A)(5) for failing to respond to Bar Counsel's legitimate inquiries, even after personal service had been effected. In addition, in Docket Numbers 25-84, 219-84, and 306-84, Respondent made every effort to delay the proceeding. He filed a response to a motion that had already been granted; he failed to file his exhibits and his list of witnesses in a timely manner, although he had been granted an extension of time; he was unprepared for the hearings and presented rambling testimony; he asked for continuances due to his illness and due to his surprise at a witness' testimony; and he moved to have the hearing reopened after he had failed to appear at a scheduled hearing.[6] In Docket Number 303-86, Respondent also sought continuances. Finally, in Docket Numbers 226-84 and 141-84, Respondent failed to file an answer to the petition and filed a frivolous motion to quash service.
Importantly, Respondent has expressed no contrition with regard to his misconduct or, for that matter, any recognition that his conduct violated disciplinary rules.
Further, Respondent has a disciplinary record. In re Washington, 489 A.2d 452 (D.C.1985). He was suspended by the Court of Appeals for ninety days as a result of two instances of neglect, practicing law in another jurisdiction without a license, and failing to respond to Bar Counsel's legitimate inquiries. Thus, the same type of misconduct for which Respondent already had been disciplined is once again before the Board. It cannot be said that the prior discipline had no effect on Respondent because the misconduct in these cases occurred during the same time period as did the conduct underlying his prior discipline. Nevertheless, the prior case, coupled with the pending cases, does demonstrate a significant pattern of misconduct and an attitude that our profession cannot tolerate.
The three Hearing Committees involved in these six consolidated cases each recommended that Respondent be suspended for a year and a day. If each of these cases were before us separately, we would be inclined to agree in each of the individual cases. But with six separate cases and prior discipline all before us, we must make a combined recommendation to the Court. Thus, in evaluating respondent's fitness to practice law, we are evaluating the "total picture" of his professional conduct and not separate instances of misconduct. See In re Hines, 482 A.2d 378, 383 (D.C.1984). Based on the pattern of misconduct, the aggravating factors, and the lack of mitigating factors,[7] the Board recommends that Respondent be suspended from the practice of law for three years.
*1284 The three-year suspension recommendation is consistent with dispositions for comparable conduct. There is only one case in this jurisdiction in which the Court has imposed as an original sanction a three-year suspension, In re Haupt, 422 A.2d 768 (D.C.1980). Haupt involved two unrelated matters in which the respondent was found to have violated several disciplinary rules: one involved neglect, misrepresentation to his client, and intention failure to seek the lawful objectives of his client; the second involved deceit in representing to a jailer that the financee of the respondent's client was the respondent's paralegal in order to smuggle her into the jail to see her fiancee in violation of jail regulations. The respondent had a prior disciplinary record: a thirty-day suspension and an informal admonition from Bar Counsel.
Respondent's misconduct in the instant case is similar to, and at least as serious as, the misconduct in Haupt. Respondent also has a prior disciplinary record and has shown no remorse nor any understanding of his unethical conduct. Similarly, in Haupt, the Court quoted the Board's report concerning the respondent's "callous disregard for his clients and an almost total lack of understanding of the ethical code." 422 A.2d at 771.
In re Smith, 403 A.2d 296 (D.C.1979), also involved two cases of neglect and deliberately misleading a client. The Court suspended the respondent for eighteen months. The instant case presents more egregious misconduct than Smith because it involves six matters. In addition, Respondent's attitude toward the disciplinary system and his prior discipline are aggravating factors.
In re Anderson, No. 86-657 (D.C.App. July 28, 1986), involves a respondent who was disbarred by the Court for two counts of dishonesty, practicing law in this jurisdiction in violation of its rules, and neglecting a legal matter. In addition, he had failed to respond to Bar Counsel's legitimate written inquiries in one case and provided a misleading response to the complaint in another case. Anderson is a more egregious case than the instant one in that the respondent in Anderson held himself out as a lawyer and as an ICC practitioner, although he had failed for over five years to pay Bar dues or to file a registration statement. He had in fact been disbarred by the ICC.
In addition to recommending that Respondent be suspended, the Hearing Committees recommended that Respondent be ordered to make restitution. Specifically, Hearing Committee Number Two recommended that Respondent be ordered to make restitution to Alfreda Turnbow in the amount of $170.00, the amount that Ms. Turnbow had paid to Respondent as an advance against litigation expenses. Hearing Committee Number Ten recommended that Respondent be ordered to make restitution to each of the following: Mr. John T. Flippen, Ms. Grace H. Barnes, Ms. Mary E. Blackwell, Ms. Audrey T. Davis, Ms. Jamesetta R. Doby, Ms. Jean D. Duren, and Ms. Miriam C. Everette in the amount of $300 each and to Ms. Mildren E. Tison in the amount of $400, bringing the total amount to $2500. Hearing Committee Number Nine recommended that Respondent be ordered to make restitution to Mr. Richard Peamon in the amount of $200, the amount that Mr. Peamon had paid to Respondent as an advance on litigation expenses and which Respondent has not returned to Mr. Peamon.
The Board agrees with the Hearing Committees' recommendations concerning restitution. The Court has entered restitution orders in similar cases. See In re Roundtree, 467 A.2d 143, 148 (D.C.1983) (court ordered restitution where client received no benefit from money paid to respondent); In re Haupt, supra (respondent's neglect of a divorce suit required return of client's money); In re Smith, supra (failure of respondent to perform services required return of retainer). We recommend that the Court order Respondent to restore to his clients money that the clients paid to Respondent as advances for litigation expenses that Respondent did not incur for legal fees for which Respondent failed to perform any significant services.
*1285 For the foregoing reasons, the Board recommends that the Court suspend Respondent for three years and order him to make restitution to Ms. Turnbow in the amount of $170.00; to Mr. Flippen, Ms. Barnes, Ms. Davis, Ms. Doby, Ms. Duren, and Ms. Everette in the amount of $300 each; to Ms. Tison in the amount of $400; and to Mr. Peamon in the amount of $200.
 BOARD ON PROFESSIONAL
 RESPONSIBILITY
 By: /s/ Mark W. Foster,
 MARK W. FOSTER
 Chair
Date: November 2, 1987
All members of the Board concur in this Report and Recommendation, except Mr. Freund and Ms. Williams, who did not participate.
NOTES
[1] Although we have in the past imposed a five-year suspension, In re Willcher, 404 A.2d 185 (D.C.1979), such an action is the equivalent of disbarment. Under our rules, a disbarred attorney (other than one convicted of a crime involving moral turpitude, see In re Kerr, 424 A.2d 94 (D.C. 1980)), may apply for reinstatement after five years. D.C.Bar Rule XI, § 21(2). An attorney suspended for more than a year must also affirmatively apply for reinstatement. Id. at § 21(1).
[2] In one case, he was found to have charged an excessive fee.
[3] Although it does not affirmatively appear in the record that Ms. Jackson's belated estate claim was ever satisfactorily dealt with, the hearing committee report on that complaint contains no reference to any actual harm.
[4] As the Board Report indicates, precedent is scant. We think the case before us falls between In re Haupt, 422 A.2d 768 (D.C.1980) (three-year suspension), and In re Willcher, supra note 1 (five-year suspension). Although numbers alone cannot be determinative, the persistence of Respondent's derelictions put him beyond Haupt. However, they fall short of those of Willcher, and in addition, Willcher had improperly handled client funds.
[1] Although Respondent did file an objection to the reports of Hearing Committees Number Two and Ten and thereafter was notified of the briefing schedule before the Board, he did not file a brief. Respondent did not file an objection to the report of Hearing Committee Number Nine. Accordingly, the Board considered these matters based on the available record in each case. Board Rule 13.3.
[2] See the Report of Hearing Committee Number Two, at paragraph 4 on pp. 4-5, for a thought-provoking discussion of whether Respondent had actual notice of the proceedings against him.
[3] "Tr." refers to the transcript of the hearings in this matter: Tr. 1-6 refers to the hearings held before Hearing Committee Number Two on November 13, 1986, December 11, 1986, January 13, 1987, January 23, 1987, March 12, 1987, and March 17, 1987, respectively; Tr. 7 refers to the hearing held before Hearing Committee Number Ten on May 12, 1987; and Tr. 8 refers to the hearing held before Hearing Committee Number Nine on July 9, 1987.
[4] Even if this charge were not supportable because of the wrong Code section having been specified, our recommendation on sanction would not be affected.
[5] Although a close question, the issue of whether Respondent's actions rose to the level of intentional misconduct in violation of DR 7-101(A)(1) is an intensely factual one. The Hearing Committee, which was in a better position to judge the weight and quality of the evidence than we are, found that it did not. In this uncontested case, there is no reason to think that the Hearing Committee applied the wrong legal standard in making that judgment, see In re Dory, 528 A.2d 1247 (D.C.1987), and our examination of the record shows none. In any event, even if a violation of the intentional misconduct section of the Code was added to the other violations found, it would not alter our views on the appropriate sanction recommended later in this Report.

The Committee also did not find that Respondent violated DR 1-102(A)(4). It credited Respondent's testimony that he believed he had filed a claim under D.C.Code Section 20-905. Thus, the Committee found that there was not clear and convincing evidence that Respondent knew that he had not filed a claim. We agree.
[6] The Board takes this opportunity to note that the Hearing Committees involved herein exhibited to considerable patience in conducting hearings that were fair to Respondent.
[7] The Board is bound to consider in mitigation Respondent's well known record of public service, In re Cope, 455 A.2d 1357 (D.C.1983), and we have done so in this case. Respondent received credit for that service in his prior case, In re Washington, 489 A.2d 452 (D.C.1985). In view of the broad pattern of offenses now before us, especially the dishonesty charges, we have given careful consideration to a recommendation of disbarment. Among the factors convincing us that a three year suspension is the appropriate one is Respondent's record of public service.